44 N.J. Super. 380 (1957)
130 A.2d 650
LAWRENCE OLSON, HELEN W. OLSON, J. IRVING POTTER AND PHYLLIS L. POTTER, PLAINTIFFS-RESPONDENTS,
v.
ARTHUR J. JANTAUSCH AND ANN M. JANTAUSCH, HIS WIFE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 4, 1957.
Decided March 28, 1957.
*383 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. John W. Lebeda argued the cause for appellants.
Mr. George Buermann argued the cause for respondents (Messrs. Boyd, Dodd, Keer & Booth, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiffs sought an injunction restraining defendants from using any part of their premises as a beauty parlor or for any other purpose than a single-family dwelling. The action was based upon a certain restrictive covenant appearing in the chains of title of the respective parties. Defendants challenged the validity and enforceability of the restriction, setting up the defenses of estoppel, laches, absence of neighborhood scheme, abandonment of restriction, immateriality of the alleged violation, and change of neighborhood. They also counterclaimed for compensatory and punitive damages for malicious prosecution. The Chancery Division determined that the single-family *384 dwelling restriction was in full force and effect, and binding on defendants' property. It entered judgment in favor of plaintiffs granting the restraint sought, and against defendants on the counterclaim. This appeal followed.
The parties are adjoining neighbors on Sunset Avenue, Verona, N.J., plaintiffs Potter owning the premises to the east (No. 44), defendants Jantausch those in the center (No. 48), and plaintiffs Olson the property to the west (No. 50). In 1911 these lands were part of a tract of about 10 1/2 acres owned by Slayback-Ingalls Development Company. We are here concerned only with lots Nos. 1, 2, 3 and 4 of that company's development fronting on Sunset Avenue. On October 11, 1911 the company conveyed lots Nos. 2, 3 and 4, extending 240 feet immediately west of No. 1, to one Meagher. The deed provided:
"The said party of the Second part [Meagher], for himself, his heirs and assigns covenant[s] and agree[s] to and with the party of the first part [the company], its successors and assigns, that he or they will use said premises for no other purposes than the erection of residential buildings with the necessary and appropriate out buildings in connection therewith, each such house to be built on a lot of at least Eighty feet frontage and the front line thereof to be no nearer than thirty feet to Sunset Avenue and each house with its necessary and appropriate out buildings to cost not less than Forty-five Hundred Dollars ($4,500.00), and to be used for single family purposes only."
Lots Nos. 2, 3 and 4 each had a frontage of 80 feet. Plaintiffs Olson now own Nos. 3 and 4, and the westerly 10 feet of No. 2  170 feet in all; defendants own the 70 remaining feet of No. 2. Slayback-Ingalls retained lot No. 1, fronting 100 feet on Sunset Avenue, until August 10, 1916, when the company's surviving directors, as trustees in dissolution, conveyed it to a Harriet B. Soule. Her deed makes no mention of restrictions like those in the Meagher deed, nor do any of the mesne conveyances leading from her unto plaintiffs Potter, the present owners of lot No. 1.
At the beginning of 1928 lots Nos. 1 and 2, then totalling 180 feet frontage, were owned by Adele L. Van Cleve, and *385 lots Nos. 3 and 4, totalling 160 feet, by Ida S. Harrison. On January 18, 1928 they and the holders of mortgages on their respective properties executed an agreement reciting the restrictions in the 1911 deed to Meagher and their desire to modify the 80-foot minimum frontage requirement, and providing that
"* * * the parties hereto, each in consideration of the covenant of the other, hereby covenant and agree that the said restrictions be and the same are modified accordingly, so that a house may be built on a lot with a minimum frontage of sixty feet, it being understood and agreed that all the other restrictions set forth in the said deed from Slayback Ingalls Development Company will remain in full force and effect."
Defendants took title to 48 Sunset Avenue on May 6, 1954, their deed making no mention of restrictions. However, a title search made at the time fully revealed the restrictions, as did a policy of title insurance covering the property. Jantausch testified that his attorney did not tell him of the restrictions in the search, and that he did not examine the policy when he got it. The trial court said it did not believe him. Nor do we.
On October 11, 1954 defendants obtained a building permit to convert part of their two-car garage into a beauty parlor. Work began some time during the week of October 20. Plaintiffs first learned the purpose of the alterations on October 27. They immediately got in touch with their present counsel who phoned defendants to tell them of plaintiffs' objection to what they were doing and then, on November 3, sent them a registered letter stating that the proposed use was in violation of their property restrictions and that his clients intended to seek injunctive relief. Defendants nevertheless continued with the work. The following week plaintiffs appealed to the Verona Zoning Board from the issuance of the permit. (See Jantausch v. Borough of Verona, 41 N.J. Super. 89 (Law Div. 1956), for the sequel. The judgment of the Law Division is now on certified appeal to the Supreme Court.) The present complaint *386 was filed November 29, 1955, as soon as necessary title searching and other preparatory details could be completed.
Defendants' first point on appeal is that the restrictions did not constitute a neighborhood scheme. Plaintiffs admit this is so. There must be a clear intent to establish a neighborhood scheme of restrictions. To be effective and enforceable, such a scheme must be (a) universal, the restrictions applying to all lots of like character brought within the scheme; (b) reciprocal, the restrictions constituting a benefit to all lots involved which are subject to the burden imposed; (c) reasonably uniform as to the restrictions imposed; they need not be identical but any variations must be such as not to create an inequitable burden or benefit. Auerbacher v. Smith, 22 N.J. Super. 568, 573 (App. Div. 1952), certification denied 11 N.J. 498 (1953); Weinstein v. Swartz, 3 N.J. 80, 86 (1949); Scull v. Eilenberg, 94 N.J. Eq. 759, 771 (E. & A. 1923). Neighborhood schemes are the product of covenant:
"* * * They arise when there is a general plan made public by the owner of the tract for the development of his property, `to be secured by a covenant embodying the restriction, to be inserted in each deed to a purchaser; and it appears, by writings or by the circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject to and to have the benefit thereof; and the covenants are actually inserted in all deeds for lots sold in pursuance of the plan * * *.' DeGray v. Monmouth Beach Club House Co., 50 N.J. Eq. 329, 340 (Ch. 1892), affirmed 67 N.J. Eq. 731 (E. & A. 1904)." Anders v. Greenlands Corp., 31 N.J. Super. 329, 342 (Ch. Div. 1954).
Slayback-Ingalls did not in 1911 bind itself by a reciprocal obligation to impose any restrictions on the balance of the 10 1/2-acre tract retained by it. It subsequently conveyed lots out of the remainder of the tract without restriction.
Since there is no neighborhood scheme, plaintiffs Olson have no right to enforce the single-family dwelling restriction. Their property and that of defendants were the subject of one and the same grant, unto Meagher. The Potters stand on a different footing. Their predecessor in title, Harriet B. Soule, took from the Slayback-Ingalls trustees *387 in dissolution by a deed subsequent to Meagher, and therefore  were it not for another matter shortly to be discussed  could enforce the restriction. Defendants' property has since 1911 been subject to an equitable servitude (often loosely referred to as an equitable easement) enforceable by each successive owner of the Potter premises, the dominant estate. Clarke v. Kurtz, 123 N.J. Eq. 174 (E. & A. 1938); Bowen v. Smith, 76 N.J. Eq. 456 (Ch. 1909); McNichol v. Townsend, 73 N.J. Eq. 276, 277-278 (Ch. 1907, Leaming, V.C.). Vice-Chancellor Van Fleet reviewed the authorities and stated the doctrine in this fashion in Coudert v. Sayre, 46 N.J. Eq. 386, 395 (Ch. 1890):
"* * * The doctrine now in force on this subject I understand to be this: that when it appears by the true construction of the terms of a grant that it was the well-understood purpose of the parties to create or reserve a right, in the nature of a servitude or easement, in the property granted, for the benefit of other land owned by the grantor, no matter in what form such purpose may be expressed, whether it be in the form of a condition, or covenant, or reservation, or exception, such right, if not against public policy, will be held to be appurtenant to the land of the grantor, and binding on that conveyed to the grantee, and the right and burthen thus created and imposed will pass with the lands to all subsequent grantees. And any grantee of the land to which such right is appurtenant, acquires, by his grant, a right to have the servitude or easement, or right of amenity, as it is sometimes called, protected in equity, notwithstanding that his right may not rest on a covenant which, as a matter of law, runs with the title to his land, and notwithstanding that it may also be true that he may not be able to maintain an action at law for the vindication of his right. * * *"
The burden was upon the Potters to establish that the restrictive covenant was made by Meagher, the prior grantee of the common grantor, Slayback-Ingalls, for the benefit of subsequent purchasers of lots owned and retained by it. Sailer v. Podolski, 82 N.J. Eq. 459, 462 (Ch. 1913); Hemsley v. Marlborough Hotel Co., 62 N.J. Eq. 164, 170 (Ch. 1901), affirmed 63 N.J. Eq. 804 (E. & A. 1902). The covenant in question contained language which clearly removed it from the category of a personal covenant intended to be enforced only by the common grantor. It was not *388 merely a covenant "by and between" the parties, but ran from Meagher, "for himself, his heirs and assigns," to the grantor, "its successors and assigns." "Assigns," in common acceptance, comprehends all those who take either immediately or remotely from or under the assignor, whether by conveyance, devise, descent or act of law. Black's Law Dictionary (4th ed. 1951), 154; 6 C.J.S., Assign, 1034 (1937); cf. Smith v. Baxter, 62 N.J. Eq. 209, 210 (Ch. 1901). The fact that the 1911 deed restriction bound both parties in the manner just described, indicates that the restriction was to run with the land, and would therefore ordinarily be available to the Potters. Clarke v. Kurtz, above, 123 N.J. Eq. 174 (E. & A. 1938); Wootton v. Seltzer, 83 N.J. Eq. 163 (Ch. 1914), affirmed 84 N.J. Eq. 207 (E. & A. 1915); 7 Thompson, Real Property (rev. ed. 1940), § 3627, pp. 115-116.
The fact that defendants' deed contained no mention of the restriction is of no moment. They acquired title with full notice of the covenant; its presence in the chain of title  not to mention the title search and title policy  charged them with notice. Pancho Realty Co., Inc., v. Hoboken Land & Improvement Co., 132 N.J. Eq. 15 (E. & A. 1942); Enderle v. Leslie Construction Co., 102 N.J. Eq. 569 (Ch. 1928).
A complicating factor, noticed in neither of the briefs or on the oral argument, and not mentioned in the trial court, emerges from our study of the three title searches covering the respective properties of the parties. It appears that Adele L. Van Cleve obtained title to the Potter premises in 1920, and to the Jantausch property in 1926. These were the Slayback-Ingalls lots Nos. 1 and 2. Ida S. Harrison took title to the Olson property (except for the most easterly 10-foot strip) by two conveyances, in 1923 (lot No. 3) and 1924 (lot No. 4). This ownership of the four lots led to the modification agreement of 1928, described above.
Where title to the dominant (Potter) and servient (Jantausch) estates becomes merged in a common owner, the equitable servitude is extinguished. In Fetters v. Humphreys, 19 N.J. Eq. 471 (E. & A. 1868), affirming 18 N.J. Eq. 260 *389 (Ch. 1867), the court distinguished between apparent and non-apparent easements. With regard to the latter, which is of the type here involved (though, as already noted, an equitable servitude is not technically an easement) it was said:
"The distinction between easements which are apparent and continuous, and those which are not apparent and continuous, is completely established by adjudicated cases. The former pass on the severance of the two tenements, as appurtenant, without the use of the word appurtenances, but the latter do not pass unless the grantor uses language in the conveyance sufficient to create the easement de novo. [citing cases]
A way comes within the description of a non-apparent easement. If existent before the seisin of the two tenements is united in the same person, it is extinguished by such unity of seisin; and whether it was a pre-existent right of way, or is a way opened by the owner and used by him, for the convenient occupation and enjoyment of the premises, it has no legal existence during the continuance of the unity of seisin, and upon the severance of the tenements does not pass unless it is a way of necessity, or the operative words of the conveyance are sufficient to grant it de novo. [citing cases]" 19 N.J. Eq., at pages 475-476.
Blumberg v. Weiss, 129 N.J. Eq. 34 (E. & A. 1941), reversing 126 N.J. Eq. 616 (Ch. 1940); 2 Thompson, Real Property (rev. ed. 1939), § 686, pp. 358-360; cf. Whalen v. Manchester Land Co., 65 N.J.L. 206 (E. & A. 1900).
Adele L. Van Cleve conveyed the lot now owned by the Potters to Newell P. Weed on September 18, 1928, without mention of any restriction. Subsequently, on July 15, 1929, she conveyed the lot now owned by the Jantausches to H. Victor Crawford, "subject to the effect of the restrictions" originally set forth in the 1911 deed from Slayback-Ingalls to Meagher, "as modified by" the subsequent 1928 Harrison-Van Cleve agreement. In view of these circumstances, there is apparently no restriction which the Potters may now enforce; such a right would necessarily depend on the existence of the fact that Mrs. Van Cleve still owned the Potter property when she conveyed to Crawford subject to the restriction. This obviously was not the case here.
It would appear to us that the Harrison-Van Cleve agreement of 1928 did not raise up a minor neighborhood scheme, *390 covering four lots only. It seems merely to have recognized that the restriction in the deed to Meagher "will remain in full force and effect." Absent were the requirements for a neighborhood scheme mentioned earlier in this opinion and set out in Auerbacher v. Smith, 22 N.J. Super. 568, 573 (App. Div. 1952), and Anders v. Greenlands Corp., 31 N.J. Super. 329 (Ch. Div. 1954).
The remaining points raised by defendants need not detain us. Plaintiffs are not barred by estoppel or laches. They said or did nothing which led defendants to initiate or continue with the beauty shop project. They did not lull defendants into any false sense of security or belief that plaintiffs acquiesced in what they were doing. Pancho Realty Co., Inc., v. Hoboken Land & Improvement Co., above, 132 N.J. Eq. 15 (E. & A. 1942).
The trial court was satisfied from the evidence that "plaintiffs found out about the alterations of the building almost as soon as [they were] commenced and that they took immediate steps to legally protect what they felt was an invasion of their rights." We agree.
"* * * Laches involves more than mere delay, mere lapse of time. To deserve that category, the delay must be for a length of time which, unexplained and unexcused, is altogether unreasonable under the circumstances, and has been prejudicial to the party asserting it * * *." Stroebel v. Jefferson Trucking & Rigging Co., 125 N.J.L. 484, 487 (E. & A. 1940).
Despite plaintiffs' prompt objections and threat of injunction proceedings, defendants persisted in continuing their alterations. They cannot in the circumstances here present cry laches. For a similar situation, see Friedman v. Cicoria, 140 N.J. Eq. 404 (E. & A. 1947); Margate Park Protective Ass'n v. Abate, 22 N.J. Super. 550 (Ch. Div. 1952).
The argument that defendants have not violated the restriction that their property "be used for single family purposes only" is without merit. A beauty salon falls outside the ambit of a dwelling and clearly violates the restriction. Cornish v. Weissman, 56 N.J. Eq. 610 (Ch. 1896); cf. Koch v. Gorruflo, 77 N.J. Eq. 172 (Ch. 1910).
*391 It is next claimed that the alleged violation is immaterial. The argument is captious; the violation remains a violation nonetheless  and a serious one. This aside, we fully agree with the trial court's finding that what defendants are doing will depreciate the value of plaintiffs' property rights and adversely affect the entire neighborhood.
Defendants' final contention is that the neighborhood has changed to such an extent that to enforce the restriction would be inequitable. But there has been no such change. The neighborhood continues to be, as plaintiffs' real estate expert put it, "the top grade one-family residential area of Verona."
Since neither side has considered the effect to be given Mrs. Van Cleve's ownership of both the Potter and Jantausch properties from 1926 to 1928, and the full effect of the Harrison-Van Cleve modification agreement, counsel will, if they desire, be afforded an opportunity to present briefs on the question within two weeks. Otherwise, the appeal will, without more, be decided in favor of appellants insofar as the complaint is concerned, and in favor of respondents as to the judgment on the counterclaim, and an accordant mandate be directed to issue.