744 A.2d 1233 (1998)
328 N.J. Super. 141
Yehuda AMIR, Plaintiff,
v.
Philip D'AGOSTINO, Violet D'Agostino and Brenda Goldstein, Defendants.
Superior Court of New Jersey, Chancery Division, Atlantic County.
Decided August 12, 1998.
*1234 Carl Valore, Linwood, for plaintiff Amir (Valore Law Offices Chartered).
Norman Zlotnick, Atlantic City, for deft. Brenda Goldstein (Mairone, Biel, Zlotnick & Feinberg).
John Palladino, Atlantic City, for defts. D'Agostinos (Hankin, Sandson & Sandman).
Frederic Shenkman, Atlantic City, for defts. MLM and the Gardners (Goldenberg Mackler & Sayegh).
Marianne Brown, Camden, for deft. Ocean Club Condominium Association (Dilworth Paxson Kalish & Kauffman, Cherry Hill).
L. ANTHONY GIBSON, J.S.C.

I. Nature of Action
By this action, plaintiff seeks to enforce individual deed restrictions relating to *1235 what uses are permissible and what products may be sold in the commercial units of a high-rise condominium. Because none of these restrictions are contained in the master deed, all of the answering defendants, other than the developer, resistplaintiff's efforts and seek a declaration that the covenants are unenforceable. The same defendants contend that the restrictions are unreasonably vague and that plaintiff lacks standing. These issues are before the court on cross-motions for summary judgment and raise questions of first impression relating to the requirements of the New Jersey Condominium Act.[1]

II. Factual Findings
Plaintiff, Yahuda Amir (Amir) is the owner of units R-20 and R-21 in the Ocean Club Condominiums. In both instances, his seller was G & A Associates. The defendants, Philip and Violet D'Agostino (D'Agostinos), are the owners of units R-25 and R-26. They purchased unit R-25 directly from the original developer, MLM Associates (MLM) and unit R-26 from Silvo and Jean Fernicola (Fernicolas). The Fernicolas had previously purchased the same unit from MLM. The D'Agostinos leased unit R-26 to defendant, Brenda Goldstein (Goldstein) in May of 1994 where she has been selling woman's clothing and other items ever since. It is her conduct which plaintiff seeks to restrict.
The Ocean Club is comprised of two high-rise towers and is located adjacent to the boardwalk in Atlantic City; it contains 726 residential units plus twenty-nine commercial units. Originally there was only one large commercial unit but in 1986, MLM subdivided that space into the current twenty-nine units and amended the master deed accordingly. Neither that amendment, the initial Public Offering Statement nor the Master Deed (filed in 1984) contained any of the restrictions on use or product sales that are the subject of the current action. However, as the commercial units were sold, MLM elected to utilize individual unit deeds to create what was intended to be a common scheme of covenants, purportedly designed to coordinate and divide the uses among the commercial space. Instead, what resulted was a complex, confusing and internally inconsistent set of restrictions which created significant disagreement as to their meaning and ultimately generated this and other litigation.
Each of the deeds presented to the court contains what is referred to as "Positive and Negative Restrictions and Covenants." These covenants not only restrict the type of commercial activity permitted in the units but they also limit the products that can be sold. In a separate portion of the deeds, entitled "Covenants and Restrictions," there is an enumeration of sixteen separate categories of restricted conduct presumably common to all units. Examples of the latter include a prohibition on activities that would increase the fire insurance on the premises; restrictions on advertising and promotional media and prohibitions against the sale of pornography.
Each set of covenants has a different group of beneficiaries. For example, the "Covenants and Restrictions" portion of the deed, by its terms, runs with the land and binds and inures to the benefit of the covenantor, its successors and assigns, as well as the Ocean Club Condominium Association. The beneficiaries of the "Positive and Negative Restrictions," are more limited and vary from deed to deed. In R-26, for example, the unit occupied by Brenda Goldstein, the occupants are given the exclusive right to operate a retail store engaged in the business of selling Christmas-related gifts and souvenirs. That restriction may not be changed without the approval of the seller, its successors or assigns and only then if the new use requested has not been acquired as an "exclusive" use by some other unit. Also, any *1236 change in the use cannot include any of twenty-four additionally enumerated prohibitions, including a prohibition on the sale of women's clothing. These restrictions, however, inure only to the benefit of the sellers (Fernicolas), their successors and assigns. Parenthetically, certain of these restrictions have never been followed.
The deed to R-25, the second unit owned by the D'Agostinos, contains sixteen separate negative restrictions. None of these restrictions prohibit the sale of women's clothing. These covenants specifically "run with the land" and inure to the benefit of the seller (MLM), the unit owner, their successors and the Condominium Association. The R-25 deed also contains "positive restrictions" which include uses that are both "exclusive" (except for unit R-23) and "non-exclusive." One of the non-exclusive items is women's wear (non-Italian) which is also subject to rights of Unit R-24 and R-20. Like the negative restrictions, these covenants "run with the land" and inure to the benefit of MLM, the unit owner, their successors and the Condominium Associations. This deed does not contain the "Covenant and Restriction" items contained in the Amir deed.
Although I have been presented with the deeds for only four out of the twenty-nine units, plaintiff has suggested and I have assumed that all the commercial deeds contain positive and negative covenants. Also, although plaintiff has not supplied a certification by the developer, I have likewise assumed that MLM intended to create a common scheme of positive and negative covenants so that the uses among the commercial units would be coordinated. Finally, I have accepted plaintiff's factual claim that when he purchased his unit he reviewed all of the other commercial deeds and proceeded on the assumption that he would have the exclusive right to sell certain items. Those items included shoes, bags, flags & banners, self-defense items, appliances, auto supplies, army and navy, prescription eye glasses, "and as such uses do not conflict with primary business operations of other Commercial Units." His exclusive rights bind his seller, G & A Associates and the respective successors of both the buyer and the seller. In a separate part of Amir's deed to R-20, he was also given the "non-exclusive" right to sell other products including T-shirts, sporting goods, jewelry, beach items and women's clothing. For the most part, however, Amir has not sold women's clothing unless one assumes that T-shirts and sweatpants fall into that category.

III. Legal Conclusions
As often noted, summary judgment will be granted only where the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. R. 4:46-2, Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 110 A.2d 24 (1954). In this case, there are cross motions for partial summary judgment and neither side contends that the material facts are in dispute. Nevertheless, sharp disagreements exist as to the legal consequences of what occurred and a number of defenses have been raised regarding the enforceability of these covenants.
To resolve these disagreements, the following issues need to be addressed: (1) whether the developer's failure to include any of the restrictions in either the Public Offering Statement or the Master Deed precludes their enforceability; (2) whether plaintiff has standing to enforce these covenants; and (3) whether these provisions satisfy the specialized requirements relating to enforceability of restrictive covenants, such as the need for uniformity and clarity. Also to be addressed are the issues of laches, waiver and estoppel.

(1) Applicability of N.J.S.A. 46:8B-9(m)
From the outset, the primary focus of these cross-motions has been the defendants' contention that the covenants are not enforceable because of the developer's *1237 failure to include them in either the Master Deed or the Public Offering Statement. The essence of this contention is that the Condominium Act is explicit with respect to what is required regarding restrictions on use and occupancy and has mandated that all such limitations be placed in the master deed. N.J.S.A. 46:8B-9(m). This issue appears to be one of first impression.
N.J.S.A. 46:8B-9 outlines the requirements for what must be placed in a master deed and includes the following:
(m) such other provisions, not inconsistent with this act, as may be desired but not limited to restrictions or limitations upon the use, occupancy, transfer, leasing or other disposition of any unit (provided that any such restriction or limitation shall be otherwise permitted by law) and limitations upon the use of common elements.[2]
Although the plain meaning of this language would cover the types of restrictions in issue here, plaintiff resists such a reading by contending that the language is permissive and that, even if mandatory, would not prevent a developer from placing use restrictions in individual unit deeds. I disagree. It is true, as plaintiff argues, that condominium developers are not required to impose restrictions on use and occupancy and thus there is no obligation to include them in the master deed or otherwise. The relevant portion of the Condominium Act refers only to such provisions as "may be desired." On the other hand, if the developer or a condominium association does choose to impose such restrictions, the requirement that they be included in the master deed is mandatory. N.J.S.A. 46:8B-9 refers to what the master deed "shall set forth, ..." and as stated in Application of Howard Savings, 32 N.J. 29, 159 A.2d 113 (1960), where a statutory requirement is precise and all inclusive in its application, "there is no leeway for statutory interpretation." Id. at 48, 159 A.2d 113.
Such a reading nevertheless raises legitimate questions of legislative intent. The statute is not explicit as to the policy behind this requirement but presumably it serves the goal of ensuring that potential purchasers of condominium units are fully informed as to any conditions that may impact on their ownership. If so, it is understandable that the legislature would want potential purchasers to be on notice of any restrictions on use, occupancy, transfer and leasing. On the other hand, the Master Deed and the Public Offering Statement are not the only vehicles for achieving that. Notice can be accomplished through purchase agreements and grantor deeds. Also, since condominiums are intended to be dealt with by their owners in the same manner as any other parcel of real property, N.J.S.A. 46:8B-4, and since the uses to which real estate may be put can be legally controlled through deed restrictions, assuming the restrictions are reasonable, Davidson Bros. v. D. Katz & Sons, 121 N.J. 196, 207-211, 579 A.2d 288 (1990), one may question why condominium developers should be treated any differently.
To assume a legislative intent that would insist on the use of the Master Deed as the exclusive means by which to fulfill the public policy that presumably underlies this statute, seems particularly questionable when one seeks to apply it to non-developer owned units. Stated differently, should N.J.S.A. 46:8B-9(m) be read to preclude an individual unit owner's attempt to restrict the future use of his or her unit absent specific authorization in the master deed? Since individually created restrictions usually have little or no impact on unit owners outside of the originator's chain of title, it is difficult to discern what legitimate legislative goal would be served by such a requirement. Moreover, individual *1238 unit owners do not create master deeds, developers do. On the other hand, even if one assumes that N.J.S.A . 46:8B-9(m) was not intended to preclude private efforts to restrict the use or occupancy of a single condominium unit, such a distinction would not help the plaintiff here.
Regardless of how one seeks to define the scheme of restrictions that is before the court, clearly it represents something more than a simple agreement between an individual unit owner and his or her successors. These restrictions were the creation of the developer while the developer was in control of the governing process for this building. The fact that these restrictions have also been passed along to others, such as through the Fernicola/D'Agostino deed, does not alter that fact. If enforceable, they impact on all of the commercial units. Indeed, they may impact on all of the residential units as well. Significantly, one of the rationales advanced by plaintiff to support the enforceability of these covenants is that they represent a so-called neighborhood scheme. Regardless of the label, however, restrictions on the use of all of the commercial units in a high-rise condominium have the potential to impact the character of the entire building. As such, they would affect all unit owners, including the residential owners, none of whom would have notice absent a reference in the Master Deed or the Public Offering Statement.
It is the judgment of this court, therefore, that the restrictions in question must be included in the Master Deed and the Public Offering Statement. See N.J.S.A. 46:8B-9(m); N.J.S.A. 45:22A-28(4). Although the Condominium Act is not explicit in defining the consequences of a failure to comply with the mandates of N.J.S.A. 46:8B-9, it is clear that the Master Deed is intended to act as the defining document with respect to the rights and obligations of unit owners. Thanasoulis v. Winston Towers 200 Ass'n, Inc., 110 N.J. 650, 542 A.2d 900 (1988); Courts at Beachgate v. Bird, 226 N.J.Super. 631, 639, 545 A.2d 243 (Ch.Div.1988). Equally significant is the fact that all agreements that violate the provisions of the Act are deemed void. N.J.S.A. 46:8B-7. Thus, to have created the kind of pervasive and integrated scheme attempted here, MLM was obligated to include it either in the original master deed or as part of a subsequent amendment. Since in this case it did neither, the covenants are unenforceable. See generally, 560 Ocean Club v. Ocean Club Condominium Ass'n, 133 B.R. 310, 316 (D.N.J. 1991).

(2) Does Plaintiff have standing?
Although the above ruling effectively resolves these motions in defendants' favor, given the uniqueness of the statutory issue just discussed and the importance of the challenges that remain, all of the issues previously identified will also be addressed. The first of these is the question of plaintiff's standing. The essence of this challenge is that there is no legal relationship between Amir and the parties he seeks to restrain which would give him the right to enforce deed restrictions outside of his chain of title. As already noted, the negative restrictions that Amir seeks to enforce involve prohibitions on sales that are contained in the D'Agostino deed to Unit R-26. However, those restrictions inure only to the "benefit of the Sellers, its successors and assigns." Amir was not the seller, the Fernicolas were. Nor is Amir a successor or assignee of the Fernicolas. Although Amir has contended that he would be getting an assignment of MLM rights, he has not done so to date. However, even if he did, it would not help. MLM is not a successor to the Fernicolas; it is a predecessor. Although there are other restrictions in the D'Agostino deed that "run with the land" and that would presumably be enforceable by parties other than the Fernicolas, the restrictions in question are not among them. See generally, Olson v. Jantausch, 44 N.J.Super. 380, 387, 130 A.2d 650 (App.Div.1957); Annotation, "Who may enforce restrictive covenants or *1239 agreements as to use of property," 51 A.L.R.3d 556, 561-566 (1973).
Amir contends that he has standing even without the purported assignment. It is his position that he is the intended beneficiary of the restrictive covenants in the Fernicola/D'Agostino deed. It is true that persons not a party to a transaction may nevertheless be the intended beneficiary of a covenant and thereby gain standing to enforce it. 20 AmJur2d Covenants, Conditions, etc. Sec. 293 (1965). To succeed in such a setting, however, plaintiff must, among other things, show that he is the intended beneficiary of the covenant and it is his burden to demonstrate that status. See generally, Roehrs v. Lees, 178 N.J.Super. 399, 429 A.2d 388 (App.Div.1981). In this case, since there is some evidence to support such an intent, I will assume it to be true. It is also necessary, however, that the owners of the burdened property be on notice of the restriction. In this case, the D'Agostinos, as the purchasers of the two commercial units, had reason to know that they were part of a pattern of rights and obligations relating to commercial units beyond their own. Since they were given the exclusive right to sell Christmas related gifts and souvenirs when they acquired Unit R-26, the D'Agostinos would have had to understand that their exclusivity would have precluded others from such uses. Conversely, to the extent that they were prohibited from selling certain items, they had reason to know that those restrictions would benefit some other unit owner or owners.
On the other hand, the intended beneficiary could have simply been the sellers, the Fernicolas. Indeed, that is what the deed said.[3] However, since I am considering the within motions from the perspective of the D'Agostinos application, I am required to view the facts most favorably to the plaintiff. Such a perspective would normally require that I assume that the D'Agostinos knew that their use restrictions were intended to benefit unit owners other than merely the Fernicolas. To so conclude here, however, requires the court to ignore the plain language of the deed. This deed indicates that these covenants are to benefit only the seller and the seller's successors and assigns. Where the unrebutted language of a document memorializing the intent of the parties is contrary to the inference suggested by a party, the inference need not be adopted, even in a summary judgment setting. See generally Maihack v. Mehl, 141 N.J.Eq. 281, 282-83, 57 A.2d 44 (Ch.Div.1948).
There are two other "standing" issues that merit attention; one relates to the rights plaintiff could arguably acquire through MLM; the second involves plaintiff's contention that he is the beneficiary of a so-called neighborhood scheme. Although not argued in quite this way, it would appear that although Amir cannot show that he was the intended beneficiary of the restrictive covenants vis a vis the Fernicola/D'Agostino deed, there is an open question as to whether he can do so through the original MLM/Fernicola deed. That deed, dated April 21, 1989, contains the same covenants that were later placed into the Fernicola/D'Agostino deed. Since the covenants running in favor of the seller on the MLM/Fernicola deed inure to MLM's benefit, the question arises as to whether MLM could effectively assign those rights to Amir, as MLM has contended it would (but never has). If so, then Amir would have standing to assert a contractual claim against the Fernicolas.
The problem with this theory is that the Fernicolas are no longer the owners of Unit R-26; nor are they parties to this action. More importantly, the MLM/Fernicola deed does not create a cause of action against Fernicola's assigns or successors, at least not with respect to the restrictions in question. Unlike the "Covenants *1240 and Restrictions" (dealing with fire insurance, advertising, pornography, etc.) which bind the successors and assigns of both the seller and the buyers, the portion of the deed containing the positive and negative restrictions, (the restrictions plaintiff seeks to enforce here) "inure only" to the benefit of the Seller, its "successors and assigns." Predecessors to the seller and assigns of buyer are not mentioned.[4]
As for the "neighborhood scheme" theory, assuming such a scheme has been validly created and is not against public policy, restrictions on use that are part of that scheme may be enforced by all of the owners within the area intended to be benefitted. See Olson v. Jantausch, supra at 386, 130 A.2d 650. This is true despite the fact that there is no direct contractual link between the property owner seeking the enforcement and the owner against whom the enforcement is sought. Id. at 387, 130 A.2d 650. Of course, the burden of establishing such a scheme is on the party seeking to rely on it. Frisch v. Rutgers Village, 8 N.J.Super. 392, 402-03, 73 A.2d 83 (Ch.Div.1950). In this case, that is the plaintiff. In addition, the proof of the common grantor's intent to create a neighborhood scheme must be clear. Olson v. Jantausch, supra at 386, 130 A.2d 650. Finally, the proponent must demonstrate that the purported scheme is (a) universal; i.e., the restrictions must apply to all properties of a like character; (b) it must be reciprocal so that the restrictions constitute a benefit to all lots involved which are subject to the burden imposed; and (c) it must be reasonably uniform as to the restrictions imposed. The restrictions need not be identical but if there are any variations, they must be such so as not to create an inequitable burden or benefit. Ibid.
In assessing the facts of this case against these standards, it is my view that a neighborhood scheme was never validly established. To begin with, the purported scheme lacks uniformity and clarity. Although the "clarity" issue will be developed further in a separate part of this opinion, it should be initially noted that plaintiff has not cited any authority which would support a scheme as convoluted as this one. Here, there are negative covenants, positive covenants, exclusive rights, non-exclusive rights, covenants that run with the land, covenants that do not, covenants subject to change and others that are not. Attempts to determine the exact nature of what is and what is not permitted requires a painstaking effort and even at that, inconsistencies remain. Secondly, the court cannot tell, based on the present proofs, whether these restrictions are universal. Only four of the twenty-nine unit deeds have been supplied. As for reciprocity, although as already noted, this court is willing to assume that the original grantor, MLM, intended to create a scheme of integrated uses, the language of the deeds narrowly limits the beneficiaries of the covenants and thus fails to achieve true reciprocity. See generally, Blaine v. Ritger, 211 N.J.Super. 644, 512 A.2d 553, cert. denied, 105 N.J. 546, 523 A.2d 183 (1986).
It is therefore the conclusion of this court that plaintiff does not have standing to enforce the covenants in question. Clearly, there is no contractual relationship between Amir and the D'Agostinos. Nor do the deeds themselves indicate that the owners of the Amir units are the intended beneficiaries. Indeed, the express language of the D'Agostino deeds precludes such an inference. In addition, plaintiff has not acquired any contractual rights from the developer which would solve the problem and has failed to prove an effective neighborhood scheme based on the lack of universality and clarity. Having so concluded, this court has nevertheless *1241 assumed standing for purposes of addressing the issue already discussed (the Condominium Act) and the one to follow (the specialized requirements for restrictive covenants).

(3) Do the restrictions satisfy the specialized requirements for restrictive covenants?
As already noted, lack of clarity has relevance beyond the issue of standing. Because the law has historically frowned on the placement of restrictions on the alienation of land, New Jersey courts have refused to enforce covenants that fail to fulfill several prerequisites. Davidson Bros. Inc. v. D. Katz & Sons, 121 N.J. 196, 211, 579 A.2d 288 (1990). In Davidson, our Supreme Court outlined eight different considerations which relate to the reasonableness and therefore the enforceability of such covenants. Although it is not necessary that this court treat all of them, at least three of the mandated inquires are relevant here:
(1) What was the intention of the parties when the covenant was executed and did the parties have a viable purpose which did not at the time interfere with existing commercial laws, such as antitrust laws, or public policy.
(2) Is the covenant reasonable concerning area, time or duration?.
(3) Does the covenant clearly and expressly set forth the restrictions? [Id. at 211, 579 A.2d 288.]
With respect to item one, this court has assumed the intent and the valid business purpose that plaintiff has argued. However, given the court's conclusion that the Condominium Act requires such restrictions to be placed within the master deed, at least when created by the developer, one cannot reasonably conclude that MLM's attempt to fulfill that purpose outside of the master deed did not conflict with existing public policy. See N.J.S.A. 46:8B-9(m).
The second factor relates to "reasonableness" as that term relates to area, time and duration. Here, area and time are not a problem but duration is. On their face, these covenants are perpetual. To tie up commercial units on the Boardwalk of Atlantic City with positive and negative covenants relating to restrictions on use and sales that can never be varied would seem to be at least questionable, if not presumptively unreasonable. Who is to say, for example, that there will always be a market for a store which can sell nothing but Christmas related gifts and souvenirs. If not, at some point this unit will become unuseable. However, such an assumption may not be appropriate in a summary judgment setting and accordingly, the court will not rely on this factor.
The third and the most critical defect relates to clarity. There is no question that one of the primary requirements for enforcement of restrictive covenants is that they make clear exactly what is intended. Ibid.; Berger v. State, 71 N.J. 206, 215, 364 A.2d 993 (1976). The restrictions in question fail that test. Certain aspects of these covenants that undermine the lack of clarity have already been discussed. See discussion at pp. 155-56, 744 A.2d at 1240-41. Not only are the deeds inconsistent, internally and otherwise, but the fact that the covenants are as detailed and as complex as they are, makes comprehension difficult even for the sophisticated reader. Although some of the prohibitions are clear, many are not. For example, does Amir's exclusive night to sell tote bags conflict with D'Agostinos sale of pocket books? Also, does a prohibition on the sale of women's clothing preclude the sale of sweatpants and bathing suits?
There are also problems with what is exclusive and what is non-exclusive. As the owner of Unit R-20, Amir has the "non-exclusive" right to sell women's clothing. On the other hand, as the owner of Unit R-21, he is given the "exclusive" right to sell sweat pants, T-shirts, athletic shoes and athletic wear. All of these items, at least arguably, may fall within *1242 the category of women's clothing. If so, how can one unit have an exclusive right to sell certain items and another unit have a non-exclusive right to sell some of the same items? Another example is R-21 which is given the exclusive right to sell "gift items." Gift items include jewelry. However, this right is subject to various prohibited items listed in Exhibit C of that deed. The prohibited list specifically references jewelry and art objects in excess of $50.00. Thus by a somewhat convoluted path, the R-21 deed gives Amir the "exclusive" right to sell "gift items" and gift items include jewelry but not jewelry and art objects in excess of $50.00. Moreover, R-21 also has a "non-exclusive" right to several other items, including, interestingly enough, jewelry and watches under $50.00. Thus, R-21 has both the exclusive and non-exclusive right to sell jewelry under $50.00. Again, plaintiff has not sought to explain how these two rights can co-exist.
The conflicts continue. Although Amir's deed gives him the non-exclusive right to sell gift items, cigarettes, salt water taffy, panty hose and related products and sun protection, each of these items has qualifiers. For example, the sale of cigarettes may not exceed 5% of the total display area. Such sales are also subject to the consent of the owner of R-22. Finally, such uses may "not conflict with primary business operations of other Commercial Units as set forth in Exhibit C." Exhibit C lists twenty different categories of prohibited uses and at least forty different prohibited items. Presumably one has to check to see what the other commercial units are selling and what their "primary business operation" is in order to determine what the rights given here include.
As already noted, the parts of these deeds that identify the beneficiary of the various covenants are similarly inconsistent. For example, in the deed to R-20, the "exclusive" rights benefit not only the seller and the purchaser but also the respective successors of either party. The same is true of the "non-exclusive" rights. In contrast, the covenants relating to the prohibited uses "run with the land" and inure to the benefit of the grantor, its successors and the Condominium Association. Thus, each set of covenants has a different set of named beneficiaries. The same pattern exists in the R-21 deed.
Further variations exist in the D'Agostino deeds. In the R-25 deed, for example, the "exclusive" rights granted to the D'Agostinos, "run with the land" and inure to the benefit of MLM Associates, the Unit owners, their successors and the Condominium Association. The same is true with regard to the non-exclusive rights. In the deed for Unit R-26, however, the exclusive rights inure only to the benefit of the sellers, its successors and assigns. Nor does this covenant run with the land or inure to the purchaser's assigns or successor. The same is true of the covenant relating to prohibited uses. Most importantly, and as already noted, the covenant prohibiting the sale of women's clothing runs only to the sellers, the Fernicolas, their successors and assigns, none of whom are parties to this action.

(4) Laches
The final defense raised by the cross-movants is laches. In support of this defense, defendants point to the fact that the D'Agostinos acquired Unit R-26 in May of 1994 and immediately leased it to Brenda Goldstein. Once in possession, Goldstein began the sale of the items that plaintiff now seeks to restrain, whereas plaintiff's suit and his subsequent effort to obtain a preliminary injunction did not occur until fifteen months later. The question then is whether that delay should bar the present suit. It is my judgment that it should not. In its most fundamental sense the doctrine of laches is a specialized form of estoppel. Crandol v. Garrison, 115 N.J.Eq. 11, 20, 169 A. 507 (Chancery 1934). It has been described as inexcusable delay in asserting a night. Atlantic City v. Civil Service Com., 3 N.J.Super. 57, 60, 65 A.2d *1243 535 (App.Div.1949). To successfully assert a laches defense, however, the proponent must demonstrate not just delay but also significant prejudice resulting from that delay. Gladden v. Pub. Emp. Retirem. Sys. Trustee Bd., 171 N.J.Super. 363, 370-71, 409 A.2d 294 (App.Div.1979). No such showing has been made here and accordingly the laches defense fails.

(5) Waiver and Estoppel
Left to be addressed are the issues of waiver and estoppel. Although neither issue was raised by counsel, during oral argument the court questioned whether the D'Agostinos' presumed enjoyment of the benefits extended by the deeds would constitute either a waiver of any statutory protection or otherwise estop them from resisting the current effort to enforce these covenants. All sides were invited to address these issues, which they did. Having reviewed that input, however, I have concluded that neither concept applies. For example, for waiver to apply, plaintiff would have to have shown that the D'Agostinos knew that there was a statutory protection available and then elected to waive it. Also, conduct that purports to constitute a waiver must be clear and unmistakable. See West Jersey Title & Guaranty Co. v. Industrial Trust Co., 27 N.J. 144, 152, 141 A.2d 782 (1958); In re: Ziyambe, 200 B.R. 790 (Bkrtcy.D.N.J. 1996). No such showing has been made. As for estoppel, that doctrine is triggered when one party changes its position in reliance on another party's conduct and where the repudiation of that conduct would violate the demands of justice and work a prejudice on the relying party. Columbia Savings & Loan v. Easterlin, 191 N.J.Super. 327, 342, 466 A.2d 968 (Ch. Div.1983), aff'd. 198 N.J.Super. 174, 486 A.2d 911 (App.Div.1985). Once again, no showing of these elements has been made here.

IV. Conclusion
There are several levels upon which I have examined the viability of these covenants and in each instance, my conclusion has been that they are unenforceable. Initially, they fail because the developer never included them in either the master deed or its subsequent amendments. See N.J.S.A. 46:8B-9(m). It may be that an otherwise valid deed restriction, reasonable in scope and imposed by individual unit owners, may not violate the Condominium Act. However, in a setting where the developer attempts to impose a complex scheme of use and sale restrictions that purports to bind an entire class of units, the statute applies. Statutory requirements aside, I am also convinced that the covenants lack the requisite clarity; that is, these covenants are too confusing and inconsistent to warrant either the support of this court or to satisfy the standards imposed by our case law. Finally, in view of the explicit and limiting language of the deeds, and the absence of a valid contractual link, it is my judgment that the plaintiff lacks standing. I have nevertheless chosen to assume standing for purposes of the previous analysis.
Accordingly, plaintiff's motion will be denied; defendants' cross motions will be granted and the within action will be dismissed. No costs will be awarded.
NOTES
[1] This opinion represents the formalization of a bench ruling rendered on May 20, 1998.
[2] Similar requirements apply to the Public Offering Statement. For example, see N.J.A.C. 5:26-4.2(15) mandating that the POS contain significant terms and restrictions affecting each unit.
[3] No certifications have been supplied from the representatives of MLM, the Fernicolas or the D'Agostinos as to what the D'Agostinos were told about any of this.
[4] Although there is a comparable concept called "equitable servitude" that allows a prior grantor to enforce restrictive covenants against subsequent grantees with notice, given the lack of an assignment, that issue is also academic.