3 So.3d 859 (2008)
BON AVENTURE, L.L.C., and William Staggers
v.
CRAIG DYAS L.L.C. and Olympia Corte Dyas.
1051679.
Supreme Court of Alabama.
August 29, 2008.
*860 James Lynn Perry of Daniell, Upton, Perry & Morris, P.C., Daphne; and Constance S. Barker of Capell & Howard, P.C., Montgomery, for appellants.
Allan R. Chason and Jessica M. McDill of Chason & Chason, P.C., Bay Minette, for appellees.
MURDOCK, Justice.
William Staggers and Bon Aventure, L.L.C.,[1] appeal from a judgment in favor of Craig Dyas L.L.C. and Olympia Corte Dyas, Craig Dyas's mother. We reverse and remand.

*861 I. Facts and Procedural History

Mrs. Dyas and her husband owned a tract of land on Highway 98 in Baldwin County. In 1979, they named the property "Bayou Volanta Commercial Park" and subdivided it into three "units." The northern portion of the property was divided into Units 1 and 2. The southern portion of the property, measuring 6.8 acres in area, was designated as Unit 3.
In 1986, Mrs. Dyas and her husband recorded restrictive covenants on Units 1 and 2 ("the restrictive covenants"), which, among other things, prohibited construction of more than "one permanent building for housing professional offices" on any of the various lots or parcels within those two units. The restrictive covenants were recorded at Miscellaneous Book 58, page 1022, in the Baldwin County Probate Court. The restrictive covenants contained a paragraph indicating that they did not apply "to any portion of Bayou Volanta Commercial Park, Unit 3 ...."
As of March 2001, Mrs. Dyas apparently had become the sole owner of Unit 3. In that month, she entered into an agreement to sell a portion of Unit 3 to Staggers. Among other things, the agreement included the following contingency: "Buyer intends to develop this property into a medical office park and possibly other health related operations. The purchase is subject to the proper subdivision, zoning verification and approval by the jurisdictional governing body in order to accomplish this type of project." As called for in the purchase agreement, Mrs. Dyas resubdivided Unit 3 into two lots. Apparently at Staggers's request, Mrs. Dyas thereafter conveyed Lot 1 of Unit 3 to Bon Aventure, L.L.C., in June 2001.[2] The deed to Bon Aventure provided that the conveyance of the property was "made subject to ... [r]estrictive covenants as contained in Miscellaneous Book 58, Page 1022...."
On November 5, 2004, Staggers and Bon Aventure sued Mrs. Dyas and Craig Dyas L.L.C., which, according to Staggers and Bon Aventure, had acted as Mrs. Dyas's agent for the sale of Lot 1. Staggers and Bon Aventure alleged that the defendants, as part of the agreement by which Bon Aventure purchased Lot 1, agreed that the purchaser could erect a sign on certain property owned by Mrs. Dyas that fronted on Highway 98. They alleged that the defendants breached this agreement by subsequently refusing to allow Staggers to erect a sign, and that their previous agreement to allow him to do so constituted a misrepresentation. Mrs. Dyas and Craig Dyas L.L.C. answered the complaint, denying the material allegations thereof. Mrs. Dyas also filed a counterclaim in which she asserted that Lot 1 was subject to the restrictive covenants and that, among other things, Bon Aventure had violated the restrictive covenants by erecting two buildings on Lot 1.
A bench trial was held on March 1, 2006. On April 25, 2006, the trial court entered a judgment in favor of Mrs. Dyas and Craig Dyas L.L.C. on the complaint and in favor of Mrs. Dyas on her counterclaim. With regard to the counterclaim, the trial court stated:
"[T]he Court does hereby determine and declare that those certain Restrictive Covenants dated September 23, 1986 and recorded in Miscellaneous Book 58, page 1022 in the Office of the Judge of Probate of Baldwin County, Alabama are properly incorporated by reference in that certain Warranty Deed from Olympia Corte Dyas to Bon Aventure, L.L.C., dated June 20, 2001, which is *862 recorded as Instrument No. 603226 in the Office of the Judge of Probate, Baldwin County, Alabama, and that those restrictive covenants constitute a burden on the title to the real property conveyed by that deed, and that the said covenants are valid and fully enforceable as to said real property according to their terms ...."
Staggers and Bon Aventure appeal from the trial court's judgment related to Mrs. Dyas's counterclaim.[3]

II. Standard of Review
As noted, this case was tried without a jury. "Where evidence is presented to the trial court ore tenus, a presumption of correctness exists as to the court's conclusions on issues of fact ...." American Petroleum Equip. & Constr., Inc. v. Fancher, 708 So.2d 129, 132 (Ala. 1997). The presumption of correctness accorded a trial court's judgment following a bench trial where evidence is presented ore tenus does not extend to its decisions on questions of law. Instead, this Court reviews de novo the trial court's rulings on questions of law. Ex parte Graham, 702 So.2d 1215, 1221 (Ala.1997).

III. Analysis
Staggers and Bon Aventure initially contend that the trial court should have dismissed Mrs. Dyas's counterclaim because, they argue, Mrs. Dyas was without standing to enforce the restrictive covenants. Although they did not raise this issue in the trial court, "`[s]tanding represents a jurisdictional requirement which remains open to review at all stages of the litigation.'" Ex parte Fort James Operating Co., 871 So.2d 51, 54 (Ala.2003) (quoting National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994)). Thus, we will address the issue of Mrs. Dyas's standing to assert her counterclaim.
According to Staggers and Bon Aventure, the restrictive covenants
"constitute a common development scheme for the Bayou Volanta Commercial Park.[4] Those who are owners of lots in Bayou Volanta are required to comply with all of the restrictions in the general scheme, and only those owners have the right to enforce those restrictions. Paragraph 15 of the restrictions provides: [`]The covenants contained herein may be enforced by the owner of any lot in the subject property or by any member of the Covenant Review Committee.'... The `subject property' is defined in the legal descriptions of Units One and Two in the first two paragraphs of the restrictions. As there is no evidence that the Dyas defendants owned property in Units One or Two, the Dyas defendants lack standing to enforce the [restrictive covenants]."
We disagree.
Mrs. Dyas executed and filed the restrictive covenants. The restrictive covenants contained the following clause:
"WHEREAS, [Mrs. Dyas] is interested in restricting the use, occupancy and improvement of all lots in said subdivision and on said parcel, so as to keep the use, occupancy and improvement of said subdivision and parcel at a high level for the benefit and pleasure of the owners of the lots in said subdivision and for the owners of neighboring property, which *863 is owned by [Mrs. Dyas] and also to promote the appearance and protect the value of lots in the subdivision and adjoining property ...."
(Emphasis added.) Thus, the record reflects that the restrictive covenants were put in place for the express benefit of property owned by Mrs. Dyas that is adjacent to the property to which the restrictive covenants apply (Units 1 and 2). Because Mrs. Dyas owns property that is expressly benefited by the restrictive covenants, she is entitled to enforce those restrictive covenants. See 20 Am.Jur.2d Covenants, Conditions, and Restrictions § 247 (2005) ("[A] breach of ... a [restrictive] covenant may be restrained at the suit of one who owns property or for whose benefit the restriction has been established...."); 2 Restatement (Third) of Property: Servitudes § 8.1 (2000) ("A person who holds the benefit of a servitude... has a legal right to enforce the servitude.").[5]
Furthermore, it is undisputed that Bon Aventure purchased Lot 1 of Unit 3 directly from Mrs. Dyas, who owns the remaining portion of Unit 3. The deed by which Mrs. Dyas conveyed Lot 1 to Bon Aventure references, on its face, the restrictive covenants. Assuming solely for purposes of this discussion of the standing issue that this reference to the restrictive covenants resulted in the incorporation of those covenants into the deed (an issue we address below), Bon Aventure, by its acceptance of the deed, would have agreed that its ownership of Lot 1 was encumbered by the covenants contained in the deed. See McKee v. Club-View Heights, Inc., 230 Ala. 652, 654, 162 So. 671, 673 (1935) ("The grantee in accepting the deed containing such conditions or covenants accepts the title encumbered thereby, and is bound as though he had signed the conveyance...."). As the covenantee to the restrictive covenants allegedly incorporated in the deed conveying the property to Bon Aventure, Mrs. Dyas would have standing to seek enforcement of the restrictive covenants. See 20 Am.Jur.2d Covenants, Conditions, and Restrictions § 242 (2005) ("The parties to a restrictive covenant may enforce it among themselves, at least so long as the covenantee continues to own any part of the tract for the benefit of which the restrictions have been created." (footnotes omitted)).
The foregoing analysis is not altered by the language in paragraph 15 of the restrictive covenants, which states that "[t]he covenants contained herein may be enforced by the owner of any lot in the subject property or by any member of the Covenant Review Committee."[6] We do *864 not read this clause as being restrictive, but rather as permissive. That is, we do not read this clause as limiting the scope of individuals and entities with the authority to enforce the restrictive covenants. Instead, we read this clause as expressly affirming that certain individuals who might or might not otherwise have a right to do so "may" enforce the covenants. Specifically, this provision makes it clear that, in addition to the owners of lots in Units 1 and 2, any member of the Covenant Review Committee "may" sue to enforce the restrictive covenants. Under the circumstances of this case, and without more upon which to base such a reading, we decline to read the affirmative grant of authority in this clause as negatively implying an abrogation of Mrs. Dyas's right to seek enforcement of the restrictive covenants under the common-law principles discussed above.
Having determined that Mrs. Dyas has standing to enforce the restrictive covenants, we turn now to the issue whether the restrictive covenants are enforceable against Lot 1, Bon Aventure's property. Regarding the restrictive covenants, the deed for Lot 1 provides:
"This conveyance is made subject to the following:
"....
"Restrictive covenants as contained in Miscellaneous Book 58, Page 1022, but deleting any covenant, condition, or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, or national origin to the extent such covenants, conditions or restrictions violate 42 U.S.C. 3604(c)."
Staggers and Bon Aventure contend that this language is ambiguous and, as a result, that it did not effectively incorporate the restrictive covenants into the deed. We agree.
Recently, we stated: "Regarding the construction of deeds, it is well settled that a deed is construed most strongly against the grantor." Barnett v. Estate of Anderson, 966 So.2d 915, 918 (Ala.2007). See also Earle v. International Paper Co., 429 So.2d 989, 994 (Ala.1983) ("[D]eeds of bargain and sale for valuable consideration are to be construed against the grantor and in favor of the grantee, when ambiguous."). See generally 23 Am.Jur.2d Deeds § 200 (2002) ("Most courts agree that if there is any ambiguity rendering a deed subject to alternative constructions, that construction will be adopted which is more favorable to the grantee than to the grantor, all doubts being resolved against the grantor." (footnotes omitted)).
Furthermore, "[i]t is also well settled that restrictions on the use of land are not favored in the law, and such restrictions are strictly construed in favor of the free use of such property." Hill v. Rice, 505 So.2d 382, 384 (Ala.1987). Indeed, the construction this Court gives a restrictive covenant "will not be extended by implication or include anything not plainly prohibited and all doubts and ambiguities must be resolved against the party seeking enforcement." Bear v. Bernstein, 251 Ala. 230, 231, 36 So.2d 483, 484 (1948).
The portion of the deed indicating that the conveyance of Lot 1 to Bon Aventure was "subject to" the "[r]estrictive covenants as contained in Miscellaneous Book 58, Page 1022," is ambiguous in two ways. First, the language employed does not specifically state that the deed incorporates the restrictive covenants, but only that the act of conveying the property is "subject to" the restrictive covenants. The deed is simply not clear with regard to whether the restrictive covenants, which by their terms are not applicable to the property conveyed to Bon Aventure, were to become a new encumbrance on the property by operation of the deed.
*865 Moreover, the document entitled "Restrictive Covenants" appearing at "Miscellaneous Book 58, Page 1022," states explicitly and in no uncertain language that it has no application to Unit 3, a portion of which was eventually conveyed to Bon Aventure. Specifically, it provides that "the Restrictive Covenants contained herein are not intended to apply to any portion of Bayou Volanta Commercial Park, Unit Three ...." Thus, even if the "subject to" language employed in the deed unambiguously incorporated the restrictive covenants into the deed, those covenants, by their own terms, do not apply to Bon Aventure's property, and, as a result, the incorporation, even if effective, would create a further ambiguity between the terms of the deed and the terms of the restrictive covenants that would be incorporated therein.
Applying the rules of construction set forth above and construing the deed most strongly in favor of both the grantee (Bon Aventure) and the free use of the property conveyed, we determine that the "subject to" clause in the deed listing the book and page of the restrictive covenants did not effectively encumber the property with the restrictive covenants that apply to Units 1 and 2 of Bayou Volanta Commercial Park. The trial court erred when it held otherwise.

IV. Conclusion
For the foregoing reason, we reverse the judgment of the trial court finding that the restrictive covenants applying to Units 1 and 2 of Bayou Volanta Commercial Park also encumber Bon Aventure's property, and we remand the case for the entry of an order consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and SEE, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
LYONS, J., concurs in the result.
WOODALL, J., dissents.
LYONS, Justice (concurring in the result).
The trial court awarded Mrs. Dyas relief on her counterclaim in which she asserted that the property Bon Aventure purchased, which was part of Unit 3, was subject to the restrictive covenants applicable to Units 1 and 2. The main opinion concludes that Mrs. Dyas had standing to enforce the restrictive covenants but then reverses the judgment of the trial court in favor of Mrs. Dyas on her counterclaim based upon a finding that the restrictive covenants do not apply to the subject property.
Mrs. Dyas and her husband are the source of the restrictive covenants because they initially placed the restrictive covenants of record. Paragraph 15 of the restrictive covenants states: "The covenants contained herein may be enforced by the owner of any lot in the subject property or by any member of the Covenant Review Committee." Mrs. Dyas is not within the category of entities described in paragraph 15 that may enforce the restrictive covenants.
The main opinion "decline[s] to read the affirmative grant of authority in [paragraph 15] as negatively implying an abrogation of Mrs. Dyas's right to seek enforcement of the restrictive covenants under the common-law principles discussed above." 3 So.3d at 863-64. In so doing, the main opinion disregards the plain language of paragraph 15 of the restrictive covenants. Moreover, even if we were to deem the reference in paragraph 15 to who may enforce the restrictive covenants as ambiguous, we cannot construe it in favor of Mrs. Dyas, the source of the covenants, because the relevant rule of construction, "expressio unius est exclusio *866 alterius," operates to prevent her from being a member of the group entitled to standing to enforce the covenants. In Ex parte Haponski, 395 So.2d 971, 972 (Ala. 1981), this Court stated:
"Similarly the meaning of `curbs, gutters, and pavement' should not be extended to include underground storm drainage systems. The agreement contained in respondent's letter specifically named the items for which the petitioner was to pay fifty percent of the costs. A familiar [maxim] of statutory construction, expressio unius est exclusio alterius, is equally applicable in contract to construction of contract language so that specific mention of one of a class of things implies the exclusion of those items not mentioned. Black's Law Dictionary, p. 521 (5th Ed.1979). It is axiomatic that if a contract is ambiguous the court will construe the contract most strongly against the party who drew it; in this case, Todd Farms. Jewell v. Jackson & Whitsitt Cotton Co., 294 Ala. 112, 313 So.2d 157 (1975).
"Where, as here, the language of the contract is unambiguous and plain in its expression, the court cannot alter the agreement by construction but rather must expound it as it is made by the parties. Flowers v. Flowers, Ala., 334 So.2d 856 (1976); Springdale Gayfer's Store Co. v. D.H. Holmes Co., 281 Ala. 267, 201 So.2d 855 (1967). The terms of this contract are clear as to what items of cost are to be shared, but even if they were considered to be ambiguous, the relevant rules of construction mandate reversal of the decision of the Court of Civil Appeals."
I therefore respectfully concur in the result.
WOODALL, Justice (dissenting).
I agree with the majority that Mrs. Dyas has standing to enforce the restrictive covenants. However, I must respectfully dissent, because, in my opinion, the restrictive covenants are enforceable against the property conveyed to Bon Aventure by Mrs. Dyas.
"A contractual provision is ambiguous if it is reasonably susceptible of more than one meaning." FabArc Steel Supply, Inc. v. Composite Constr. Sys., Inc., 914 So.2d 344, 357 (Ala.2005). In my opinion, the language of the conveyance from Mrs. Dyas to Bon Aventure is reasonably susceptible of only one meaning, namely, that it imposed upon that portion of Unit 3 conveyed to Bon Aventure the same restrictive covenants that had been imposed on Units 1 and 2 by the referenced recorded instrument. I agree with Mrs. Dyas that any other construction "would mean that there is no significance to the `subject to' provision of the deed referencing the restrictive covenants, contrary to the general rules of construction." Mrs. Dyas's brief, at 19-20. See Wittmeir v. Leonard, 219 Ala. 314, 317, 122 So. 330, 333 (1929) ("In construing conveyances, `each word is presumed to have been used for some purpose, and deemed to have some force and effect.'").
NOTES
[1] The notice of appeal describes this appellant as "Bon Adventure and/or Bon Adventure, L.L.C." It appears, however, that the real party in interest is Bon Aventure, L.L.C.
[2] We assume for purposes of this opinion that Staggers holds an ownership interest in Bon Aventure, although the nature and extent of his affiliation with Bon Aventure is not apparent from the record.
[3] They do not appeal from the portion of the judgment ruling against them on their claim against Mrs. Dyas and Craig Dyas L.L.C.
[4] Staggers and Bon Aventure's argument as quoted is somewhat confusing. Although Bayou Volanta Commercial Park includes all three units, they apparently intend their references to Bayou Volanta Commercial Park in the first two sentences of the quoted paragraph to refer to only Units 1 and 2.
[5] See also Nature Conservancy v. Congel, 253 A.D.2d 248, 251, 689 N.Y.S.2d 317, 319 (1999) ("Subsequently, New York courts adopted the view that an owner of neighboring land, for whose benefit a restrictive covenant is imposed by a grantor, may enforce the covenant as a third-party beneficiary despite the absence of any privity of estate between the grantor and the neighbor ...."); Amir v. D'Agostino, 328 N.J.Super. 141, 152, 744 A.2d 1233, 1239 (1998) ("Amir contends that he has standing even without the purported assignment. It is his position that he is the intended beneficiary of the restrictive covenants in the Fernicola/D'Agostino deed. It is true that persons not a party to a transaction may nevertheless be the intended beneficiary of a covenant and thereby gain standing to enforce it."); Southeast Toyota Distribs., Inc. v. Fellton, 212 Ga.App. 23, 25, 440 S.E.2d 708, 711 (1994) ("If a grantor sells his property with restrictions which he intends are for the benefit of his neighbors, the neighbors, as beneficiaries, may enforce the benefiting restrictions."); and Muldawer v. Stribling, 243 Ga. 673, 675, 256 S.E.2d 357, 359 (1979) ("Where a grantor sells his property with a restriction benefiting his neighbors, the neighbor, as the beneficiary, may enforce it.").
[6] The record does not reflect whether Mrs. Dyas is a member of the "Covenant Review Committee."