921 So.2d 436 (2005)
KOHLER COMPANY, INC.
v.
Michelle Lenora MILLER and Cinram, Inc.
2030976.
Court of Civil Appeals of Alabama.
August 5, 2005.
*438 William A. Austill, William K. Bradford, and Andrew P. Anderson of Austill, Lewis & Simms, P.C., Birmingham, for appellant.
Ralph W. Hornsby, Sr., Jeffrey G. Blackwell, and Jennifer L. McKown of Hornsby, Watson, Hornsby & Blackwell, Huntsville, for appellee Michelle Lenora Miller.
Joseph H. Driver and Ryan G. Brake of Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C., Birmingham, for appellee Cinram, Inc.
CRAWLEY, Presiding Judge.
Michelle Lenora Miller ("the worker") sued Kohler Company, Inc., seeking workers' compensation benefits for injuries that, she asserted, were caused by repetitive motions she was required to make during her employment.[1] Kohler answered the worker's complaint, asserted various defenses, and filed a third-party complaint against Cinram, Inc., the worker's subsequent employer. The third-party complaint alleged that, during her employment with Cinram, the worker had suffered an aggravation of her preexisting conditions and asserted that, based on the "last injurious exposure rule," Cinram was liable to the worker for workers' compensation benefits.
Cinram moved for a summary judgment, maintaining (1) that the worker had failed to give it any notice of a work-related injury and (2) that the worker had not experienced a "new" injury or an "aggravation" of an old injury but had, instead, suffered a "recurrence" of a preexisting condition caused by an on-the-job injury when the worker was employed by Kohler. On October 31, 2004, the circuit court entered a summary judgment in favor of Cinram on the third-party complaint.
Following a trial on the worker's claims against Kohler, the circuit court entered a judgment determining that the worker had suffered a 29% permanent partial disability and awarding compensation benefits accordingly. Kohler timely appealed, raising five issues.
This case is governed by the 1992 Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975. That act provides that an appellate court's review of the standard of proof and its consideration of other legal issues in a workers' compensation case shall be without a presumption of correctness. § 25-5-81(e)(1), Ala.Code 1975. It further provides that when an appellate court reviews a trial court's findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2). Our Supreme Court "has defined the term `substantial evidence,' as it is used in § 12-21-12(d), to mean `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996)(quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). This court has also concluded: "The [1992 Workers' Compensation] Act did not alter *439 the rule that this court does not weigh the evidence before the trial court." Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
Kohler manufactures bathroom fixtures. The worker began working for Kohler in May 1999 as an assistant packaging operator. She later worked as a packaging originator and as a mold operator for Kohler. In all three positions, the worker worked 12-hour shifts during which her hands and arms were in constant and repetitive motion. On November 1, 2000, the worker was packaging bathtub and shower sets for shipment when she felt her right wrist "pop," after which her wrist became swollen and painful. The worker immediately reported the injury to her supervisor, who sent her to the company doctor. The physician gave her a wrist splint, restricted her to a 25-pound weight limit, and prescribed anti-inflammatory medication. The worker continued to suffer pain in her right hand and had difficulty performing her job duties. In addition, the worker had trouble sleeping at night due to the pain in her hand.
In December 2000, the worker notified Kohler that, as a result of favoring her right hand and overusing her left hand, she had begun to experience pain in her left hand also. Kohler sent the worker to see Dr. Suzie Lynn at Occupational Health Group in Huntsville where the worker complained of pain in both hands, as well as pain in the right forearm "primarily around the medial aspect of the elbow." Dr. Lynn ordered a nerve-conduction study, which disclosed that the worker had neuropathy, or carpal tunnel syndrome, in both hands. Dr. Lynn referred the worker to Dr. Phillip Maddox, an orthopedic surgeon. On March 1, 2001, Dr. Maddox performed carpal-tunnel-release surgery on the worker's right hand; on March 15, 2001, he performed carpal-tunnel-release surgery on the worker's left hand. Despite the worker's complaints of continuing postoperative pain and swelling, Dr. Maddox determined that the worker had reached maximum medical improvement ("MMI") on May 8, 2001, opining that her pain and swelling would eventually resolve. Dr. Maddox assigned the worker an impairment rating of five percent to each arm, a whole-body impairment rating of six percent, and released her to full duties at work.
After the worker returned to her regular duties at work, she continued to have pain, stiffness, numbness, and swelling in both hands. She testified that the pain kept her awake at night and that "it was like [she] had never had surgery on [her] hands at all." The worker returned to Dr. Maddox on September 25, 2001, and on October 5, 2001, complaining of pain. Dr. Maddox diagnosed carpal tunnel syndrome, "trigger-finger," and de Quervain's tendonitis in the worker's right hand. He treated her with a wrist splint and pain relievers and returned her to regular duty. The worker, however, testified that she could not function at work because of the pain and that, therefore, she requested another doctor.
From a panel of four doctors provided by Kohler, the worker chose Dr. Victoria Masear, who began treating the worker on February 28, 2002. Dr. Masear made the following diagnoses: persistent recurrent right carpal tunnel syndrome; right long "trigger-finger"; and right de Quervain's tendonitis. Dr. Masear determined that all three conditions were related to the repetitive nature of the worker's job duties. She recommended surgery to correct the three conditions. On March 15, 2002, Dr. Masear performed three surgical procedures on the worker's right hand: a right carpal tunnel release, a right long "trigger-finger" release, and a right de *440 Quervain's release. Dr. Masear limited the worker to sedentary activities with no right-hand gripping for three to four months.
When the worker informed Kohler of her limitations, Kohler assigned her different job duties, which consisted of peeling off labels and affixing them to boxes for shipping. The worker was supposed to use only her left hand for this work, but she found that she could not peel labels without also using her right hand. The repetitive work caused her pain to increase. The worker testified that, although she had never been pain-free after her initial injury in November 2000, her "baseline" level of painwhich she described as 5 to 6, with 10 being the worstremained constant unless she engaged in repetitive use of her hands, in which case she said her pain increased above the "baseline" and made working with her hands intolerable. Dr. Masear told the worker on April 30, 2002, that it would be six to eight weeks before she could return to her full duties at work.
On June 2, 2002, Kohler terminated the worker's employment for allegedly falsifying her time card. The circuit court heard extensive testimony from the worker and from her supervisor regarding this incident. The court found as a fact that the worker "did nothing wrong to justify her termination" and that Kohler's stated reason for terminating her employment was baseless.
On June 11, 2002, Dr. Masear determined that the worker had reached MMI and authorized the worker to return to full duty at work, assigning her an 8% impairment rating to her right hand and a 4% impairment rating to the whole body.
After being discharged by Kohler, the worker was unemployed for three months. Then she went to work as a loan originator at Advanced Mortgage Company in Decatur, Alabama, for about four months. Her next job was as an assembly-line employee at Cinram, Inc., in Huntsville, Alabama. Her job duties there included taking 5- to 10-pound DVD boxes from a conveyor belt and placing them on a pallet. The worker began to experience elevated levels of pain in her hands and, when she told her Cinram supervisor about the pain, the supervisor moved her to a different position reworking defective DVDs. This job, however, also required repetitive use of her hands and the worker's pain did not abate. The worker testified that she suffered no new injury at Cinram; the repetitive use of her hands simply elevated her "baseline" pain to an intolerable level. The worker left Cinram because she could not perform her job duties without experiencing that intolerable level of pain.
At the time of trial on June 7, 2004, the worker was employed by Fontainebleau Management Services, L.L.C., as the manager of an apartment complex. She testified that, although her job duties required some repetitive hand use, such as light typing and telephoning, her employer allowed her to take breaks to rest her hands and she experienced only her normal "baseline" pain in her current employment. She stated that for pain relief she used over-the-counter medications.

I.
Kohler argues that the circuit court erred by awarding compensation benefits to the worker for an injury to the body as a whole rather than for scheduled injuries under either § 25-5-57(a)(3)a.24., Ala. Code 1975 ("[f]or the loss of two arms, other than at the shoulder, 400 weeks"), or under § 25-5-57(a)(3)a.25., Ala.Code 1975 ("[f]or the loss of two hands, 400 weeks"). The circuit court's judgment rendered on June 15, 2004, awarding benefits outside the schedule, relied on this court's decision *441 in Masterbrand Cabinets, Inc. v. Ruggs, 891 So.2d 869 (Ala.Civ.App.2004). The judgment states, in pertinent part:
"[The worker's] right hand injury extended to other parts of the body so as to entitle [the worker] to be compensated outside the schedule. The evidence is clear that [the worker's] right hand injury caused her left hand to become symptomatic and caused [her] left hand to have carpal tunnel syndrome with resulting surgery. The Court of Civil Appeals in a very recent case rendered on April 16, 2004, dealt with the same issue. See, Masterbrand Cabinets, Inc. v. Ruggs .... In [Ruggs, the worker] testified that her left arm injury increased the use of her right hand, and that had a great deal of effect on her right arm .... The Court of Civil Appeals said that
"`[w]e conclude that Ruggs presented substantial evidence indicating that the effect of the injury to her left hand and wrist extended to her right upper extremity because of the resulting overuse of her right upper extremity and that her injury to her left hand and wrist hinders her ability to use her right upper extremity. Accordingly, we conclude that the trial court did not err in treating Ruggs's left hand and wrist as an injury to the whole body.'"
"In the instant case, [the worker] initially suffered an injury to her right hand. She then started overcompensating for this injury by doing most of the work with her left hand. Shortly thereafter, she began having symptoms of carpal tunnel syndrome in her left hand.... [The worker] certainly meets the criteria of [Ruggs]. The Court finds that [the worker's] right hand injury extended into her left hand to the extent that left hand surgery was required. [The worker's] right hand injury has most certainly extended to other parts of [the worker's] body and interferes with their efficiency so as to meet the requirements of Ex parte Drummond, 837 So.2d 831 (Ala.2002). Therefore, this Court finds that [the worker] is not bound by the schedule of injuries set forth in § 25-5-57(a)(3). [The worker's] injury will be treated by this court as a whole body injury."
In Stone & Webster Construction, Inc. v. Lanier, 914 So.2d 869 (Ala.Civ.App.2005), this court "overruled [Ruggs] to the extent it stood for the proposition that a court is not bound by the scheduled compensation in § 25-5-57(a)(3) when the effect of an injury to one scheduled member extends to another scheduled member." Masterbrand Cabinets, Inc. v. Johnson, [Ms. 2030409, June 3, 2005] ___ So.2d ___, ___ (Ala.Civ.App.2005)(plurality opinion).
In Masterbrand Cabinets, Inc. v. Johnson, supra, the employee also suffered from bilateral carpal tunnel syndrome. The employer, like Kohler in this case, argued that the employee should have been awarded compensation for a scheduled injury to both arms under § 25-5-57(a)(3)a.24., Ala.Code 1975. The circuit court, however, entered a judgment awarding the employee permanent-total-disability benefits for an injury to the body as a whole, and this court affirmed that judgment. Our affirmance was based upon the fact that the trial court was presented with substantial evidence indicating that the employee experienced constant and unremitting pain of such severity that the effect of the arm injuries debilitated the employee's body as a whole in a manner not contemplated by the schedule. Masterbrand Cabinets, Inc. v. Johnson, ___ So.2d at ___. Compare Ex parte Drummond Co., 837 So.2d 831, 836 n. 11 (Ala. 2002) (noting that "[w]e recognize that pain can be totally, or virtually totally, *442 debilitating, but this case does not present such a situation").
The instant case is distinguishable on its facts from Masterbrand Cabinets, Inc. v. Johnson, supra. In Johnson, the employee described her pain at a level of 8 to 10, with 10 being the worst. Here, the worker characterized her "baseline" pain at a level of 5 to 6, with 10 being the worst. In Johnson, the employee left her employment with Masterbrand one year after her bilateral-carpal-tunnel surgery and was never again gainfully employed. Here, the worker was employed almost continuously after leaving Kohler and was gainfully employed at the time of trial in a job that, she said, did not increase her "baseline" pain to an intolerable level. In Johnson, the employee took prescription medication for pain and used a TENS (transcutaneous electrical nerve stimulation) unit two or three times a day for pain relief; she took an antidepressant to help her sleep. Here, the worker relied on over-the-counter medications for pain relief. Cf. Ex parte Drummond, 837 So.2d at 836 (holding that the trial court did not have substantial evidence to justify an award of compensation outside the schedule when the worker suffered only occasional swelling in his knee and took nothing stronger for pain than ibuprofen and naprosyn).
We conclude that in the present case the worker did not present substantial evidence indicating that she suffered from the kind of debilitating pain that impaired the body as a whole and removed her from being limited, by our supreme court's holding in Ex parte Drummond Co., supra, to an award of compensation for a scheduled injury under § 25-5-57(a)(3)a.24. Because the circuit court's award of compensation outside the schedule was based upon its reliance on Ruggs, which has been overruled, and because there was no other legal basis upon which to deviate from the rule of Ex parte Drummond Co., the circuit court's compensation award must be reversed.

II.
Relying on Ex parte Fort James Operating Co., 905 So.2d 836 (Ala.Civ.App. 2004), Kohler contends that the circuit court erred by allowing the worker to present evidence indicating that she had pain extending to her neck and shoulders because, it says, the worker did not timely assert those complaints.
In Fort James, this court issued a writ of mandamus ordering the trial court to set aside an order allowing an employee, one week before trial, to amend his complaint for the third time, thus "reviving a previously withdrawn claim for compensation for an impairment to his back and asserting for the first time a claim for compensation for impairment to his shoulder." Ex parte Fort James Operating Co., 905 So.2d at 844. This court held that the employee had not shown good cause for the late amendment, which "came more than three years after [the employee] had filed his original complaint [seeking compensation only for injuries to his leg, a scheduled member], and approximately two years after [the employee] had experienced problems with both his back and his shoulder [nonscheduled parts of the body]." 905 So.2d at 844. This court determined that the amendment would have resulted in "undue delay or prejudice" to the employer. 905 So.2d at 845. We stated:
"If [the employee's] amendment were allowed, the investment of time, effort and financial resources the parties have made for three years in discovery, in trial preparation, and in otherwise `litigating' this case up until the week before the trial was to begin would have to be repeated in significant measure, and *443 the trial would have to be delayed yet again."
905 So.2d at 844-45.
In the present case, the circuit court's judgment made no findings with regard to whether the worker's bilateral hand injuries caused pain extending to her neck and shoulders or whether, if such pain existed, the worker was entitled to be compensated outside the schedule. The circuit court specifically stated that it need not decide those issues because it had already determined that the worker was entitled, under Ruggs, to be compensated outside the schedule.[2]
Despite the worker's testimony that she experienced neck and shoulder pain as early as September 2001, her complaint, filed on March 13, 2003, alleged that she had suffered work-related injuries only to her hands, wrists, and arms; the complaint did not allege any injury to her neck or shoulders or assert that the effects of her hand injuries extended to her neck and shoulders. The record does not contain any amendment to the complaint alleging neck or shoulder injuries or alleging that her hand and wrist injuries extended to other unscheduled parts of her body. The worker filed answers to interrogatories, and she was deposed on May 30, 2003. She did not mention neck or shoulder injuries in her answers to interrogatories or at the time she was deposed and, when questioned, she stated that her claims were limited to her hands, wrists, and arms.
The first mention of neck and shoulder pain appears to be in a functional capacities evaluation performed in August 2003. The worker's expert, Dr. Keith C. Anderson, who was deposed on December 4, 2003, testified to restrictions imposed upon the worker because of pain extending to her neck and shoulders.
At trial, the worker attempted to amend her complaint to conform to the evidence she proposed to introduce indicating that the effects of her hand, wrist, and arm injuries extended to other parts of her body, i.e., her neck and shoulders. Kohler objected, maintaining that the worker's untimely assertion of that claim, six months after her complaint was filed, three years after her first report of injury to Kohler, and following her employment by three other employers, prejudiced it. The circuit court allowed the evidence pertaining to the worker's neck and shoulder pain, but, as we have pointed out, it did not rely on that evidence in order to award the worker compensation outside the schedule.
We believe that the holding in Fort James applies and that the worker's untimely assertion of her complaints regarding neck and shoulder pain barred the admission of any evidence relating to those complaints. The admission of the evidence, however, was harmless because the trial court did not rely on it, see Rule 45, Ala. R.App. P., and we have reversed the judgment awarding the worker compensation outside the schedule on other grounds.

III.
For two reasons, Kohler contends that the circuit court erred by admitting evidence *444 of vocational disability. First, relying on § 25-5-57(a)(3)i., Ala.Code 1975, Kohler argues that such testimony was inadmissible because the worker returned to work at a wage equal to or greater than her preinjury wage. Second, relying on § 25-5-57(a)(3)i.(iii), Kohler argues that evidence of vocational disability was inadmissible because the worker was terminated from her employment for a dishonest actfalsifying her time card.
We need not address either argument because, as we have previously determined, the worker was not entitled to be compensated outside the scheduled-member provisions of § 25-5-57; testimony regarding the worker's vocational disability, therefore, served no purpose. See Smith v. Michelin North America, Inc., 785 So.2d 1155, 1159 (Ala.Civ.App.2000). Compensation for a permanent partial disability arising from an injury to a scheduled member is governed exclusively by § 25-5-57(a)(3), Ala.Code 1975; thus, "evidence of vocational disability cannot serve to further any recovery" and is irrelevant. Smith, 785 So.2d at 1159.
"`Where scheduled benefits are provided for compensation for loss of a member[,] they are not dependent on actual wage loss....'
"`....
"`... [W]here there is an injury resulting in the loss of a member, or the loss of the use of a member, so as to invoke payment of compensation as provided [by the Workers' Compensation Act], and where this is not accompanied by other physical disability (of the body), the payment of the specified sum is intended to fully compensate the injured employee for the injury sustained.'"
Ex parte Drummond Co., 837 So.2d at 835 (quoting Leach Mfg. Co. v. Puckett, 284 Ala. 209, 214, 224 So.2d 242, 246-47 (1969)).

IV.
Kohler argues that the circuit court erred by entering a summary judgment in favor of Cinram on its third-party complaint because, it says, there was a genuine issue of material fact with regard to whether the "last injurious exposure" rule applied.
Appellate review of a summary judgment is de novo. Ex parte Ballew, 771 So.2d 1040 (Ala.2000). A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee, 592 So.2d at 1038 (footnote omitted). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d at 871; see Ala.Code 1975, § 12-21-12(d).
"`Under the "last injurious exposure" rule, "liability falls upon the carrier covering [the] risk at the time of the most recent injury bearing a causal relation to the disability." North River Insurance Co. v. Purser, 608 So.2d 1379, 1382 (Ala.Civ.App.1992). The trial court must determine whether the second injury is "a new injury, an aggravation of a prior injury, or a recurrence of an old injury; this determination *445 resolves the issue of which insurer is liable." Id.

"`A court finds a recurrence when "the second [injury] does not contribute even slightly to the causation of the [disability]." 4 A. Larson, The Law of Workmen's Compensation, § 95.23 at 17-142 (1989). "[T]his group also includes the kind of case in which a worker has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion." 4 A. Larson, § 95.23 at 17-152. A court finds an "aggravation of an injury" when the "second [injury] contributed independently to the final disability." 4 A. Larson, § 95.22 at 17-141. If the second injury is characterized as a recurrence of the first injury, then the first insurer is responsible for the medical bills; however, if the injury is considered an aggravation of the first injury, then it is considered a new injury and the employer at the time of the aggravating injury is liable for the medical bills and disability payments. North River, supra.'
"United States Fid. & Guar. Co. v. Stepp, 642 So.2d 712, 715 (Ala.Civ.App. 1994)."
Patterson v. Liz Claiborne, Inc., 872 So.2d 181, 186 (Ala.Civ.App.2003).
In support of its motion for a summary judgment, Cinram presented the worker's testimony indicating that she had suffered no new injury, or aggravation of a prior injury, while working at Cinram and that she had made no claim against Cinram for workers' compensation benefits. The worker testified that, after her initial injury at Kohler in November 2000, she had never been pain-free and that she had always experienced a "baseline" level of pain that remained constant unless she engaged in repetitive use of her hands, in which case, she said, her pain increased above the "baseline" and made working with her hands intolerable. The worker explained that while she worked at Cinram her pain increased but that, when she left Cinram, her pain subsided to the "baseline" level. Cinram also submitted testimony of the worker's treating physicians indicating that the worker's account of recurrent pain from an earlier injury sustained while working for Kohler was consistent with the medical evidence. All of the medical testimony indicated that carpal tunnel symptoms tend to recur and periodic flare-ups are not unexpected.
In opposition to Cinram's motion, Kohler failed to present substantial evidence indicating that the worker's employment with Cinram either caused a new injury or aggravated her old injury to the extent that it increased her disability. Kohler submitted no evidence indicating that the worker suffered a "new" injury or an "aggravation" of an old injury at Cinram; instead, the evidence was undisputed that the worker experienced a recurrence of the earlier symptoms of the injuries she had sustained while working at Kohler. The circuit court did not err in entering a summary judgment for Cinram.
The summary judgment in favor of Cinram is affirmed. The judgment awarding the worker compensation benefits for a 29% permanent partial disability to the body as a whole is reversed, and the cause is remanded for the entry of an award of permanent partial benefits pursuant to § 25-5-57(a)(3)a.24., Ala.Code 1975.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN and BRYAN, JJ., concur.
*446 MURDOCK, J., concurs in part and concurs in the result in part, with writing.
THOMPSON, J., concurs in the result, without writing.
MURDOCK, Judge, concurring in part and concurring in the result in part.
I concur with the main opinion except for Part II thereof; I concur in the result in Part II of the main opinion.
NOTES
[1] The worker also filed a retaliatory-discharge claim against Kohler. The circuit court granted a motion by Kohler to sever that claim, ordering the circuit clerk to "docket a separate case with a new civil action number as to Count Two of the complaint alleging claims [of] retaliatory discharge." See Rule 21, Ala. R. Civ. P.
[2] The judgment states:

"This court does not have to decide on the merits of [the worker's] claim that she had pain extending into her right elbow, right shoulder, and right side of her neck to find that [the worker's] right hand injury extended to other parts of the body so as to entitle [the worker] to be compensated outside the schedule. The evidence is clear that [the worker's] right hand injury caused her left hand to become symptomatic and caused [her] left hand to have carpal tunnel syndrome with resulting surgery. The Court of Civil Appeals in a very recent case rendered on April 16, 2004, dealt with the same issue. See, Masterbrand Cabinets, Inc. v. Ruggs ...."