Carol S. Clemons sued her former employer, Advantage Sales of Alabama, Inc. *Page 116 
("Advantage"), seeking to recover workers' compensation benefits based on alleged work-related injuries that she sustained on June 20, 2000, February 23, 2001, and March 26, 2002, while she was employed by Advantage. Clemons claimed that she had injured her right shoulder on June 20, 2000, that she had developed carpal tunnel syndrome in her right arm and wrist on February 23, 2001, and that she had sustained injuries to her elbows on March 26, 2002. Advantage answered and denied liability.
At the time of the June 20, 2000, and the February 23, 2001, injuries, Advantage was insured by Legion Insurance Company ("Legion"). On March 28, 2002, Legion was ordered into rehabilitation by a Pennsylvania trial court. On July 28, 2003, the Pennsylvania trial court declared Legion insolvent and entered an order of liquidation. As a result of Legion's insolvency, the Alabama Insurance Guaranty Association ("AIGA") assumed Legion's obligations with respect to Clemons's June 20, 2000, and February 23, 2001, claims against Advantage. See § 27-42-8(a)(2), Ala. Code 1975. On February 23, 2004, Clemons and Advantage entered into a consent order settling all workers' compensation claims related to Clemons's June 20, 2000, injury to her shoulder and Clemons's February 23, 2001, injury to her right arm and wrist. The order left the issue of future medical benefits open.
On March 21, 2005, Clemons filed her first amended complaint in which she alleged that in or about July 2004 she developed carpal tunnel syndrome in both of her hands and wrists. Clemons named Liberty Mutual Insurance ("Liberty") and The PMA Insurance Group ("PMA") as defendants and asked the court to determine which carrier was responsible for the payment of Clemons's workers' compensation claims.[1] Both Liberty and PMA were workers' compensation insurance carriers for Advantage during the time Clemons allegedly suffered her injuries. On June 1, 2005, Clemons amended her complaint a second time to add AIGA as a defendant because, she asserted, she was uncertain whether the carpal tunnel syndrome she alleged had developed in or about July 2004 was a recurrence of her February 2001 injury or was a new injury.
On August 23, 2005, AIGA filed a motion for a summary judgment, and on October 12, 2005, PMA filed a motion for a summary judgment. On January 24, 2006, the trial court entered a summary judgment in favor of AIGA; the trial court did not rule on PMA's summary-judgment motion. Following the presentation of ore tenus evidence, the trial court entered a detailed final judgment on May 24, 2006, in which it found Clemons to be permanently and totally disabled as the result of her work-related injuries. The trial court apportioned the payment of compensation benefits equally between Liberty and PMA. On June 14, 2006, Advantage appealed.
On June 21, 2006, PMA filed a post-judgment motion in which it argued that the trial court had erred in apportioning liability between successive insurance carriers in violation of the "last injurious exposure" rule.[2] On August 1, 2006, the trial *Page 117 
court entered an amended final judgment in which it granted PMA's postjudgment motion, found Clemons's July 2004 injury to be a new injury or condition that occurred during Liberty's policy coverage, and reapportioned liability to hold Liberty responsible for payment of Clemons's medical bills related to the July 2004 injury. PMA and Liberty timely appealed. This court granted a joint motion filed by Advantage, PMA, and Liberty to consolidate the three appeals.
Advantage, PMA, and Liberty raise several issues on appeal. Advantage contends that the trial court erred by considering evidence that Clemons suffered from depression as a result of her work-related injuries, that substantial evidence did not support a finding that Clemons was permanently and totally disabled, and that Clemons was not entitled to recover permanent-total-disability benefits outside of the schedule set forth in § 25-5-57(a), Ala. Code 1975. PMA and Liberty both contend that the trial court erred in its application of the "last injurious exposure" rule. However, as discussed below, the dispositive issue, raised by Advantage on appeal, is whether the trial court erred by considering evidence of a psychological injury when that issue was raised by Clemons for the first time at trial. Advantage specifically contends that it did not learn of Clemons's allegation that she suffered from depression as a result of her work-related injuries until the trial had commenced, that it objected to the submission of evidence regarding Clemons's depression at trial, and that the trial court's consideration of that evidence unduly prejudiced Advantage.
Rule 15(b), Ala. R. Civ. P., states, in pertinent part:
 "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence. . . . The Court is to be liberal in granting permission to amend when justice so requires."
"The determination of whether an issue has been tried by the express or implied consent of the parties within the meaning of Rule 15(b), Ala. R. Civ. P., is a matter that lies within the discretion of the trial court." Hathcock v. Hathcock,685 So.2d 736, 738 (Ala.Civ.App. 1996) (citing McCollum v.Reeves, 521 So.2d 13 (Ala. 1987)). The trial court's determination as to whether an issue has been tried by consent will not be reversed on appeal absent an abuse of that discretion. Id. *Page 118 
 "`"[I]f Rule 15 is to be of any benefit to the bench, bar, and the public, the trial judges must be given discretion to allow or refuse amendments. . . . We state also that Rule 15 must be liberally construed by the trial judges. But, that liberality does not include a situation where the trial on the issues mil be unduly delayed or the opposing party unduly prejudiced."'"
Tounzen v. Southern United Fire Ins. Co.,701 So.2d 1148, 1150 (Ala.Civ.App. 1997), quoting Hayes v. Payne,523 So.2d 333, 334 (Ala. 1987), quoting in turn Stead v.Blue Cross-Blue Shield of Alabama, 294 Ala. 3, 6,310 So.2d 469, 471 (1975).
Our review of the record indicates that Clemons did not allege that she suffered from depression in her original complaint or in the two subsequent amendments to her complaint. In her brief on appeal, Clemons contends that Advantage was initially put on notice that she suffered from depression as a result of her physical, work-related injuries when she testified in a deposition before trial regarding her depression. Clemons's deposition was not submitted as evidence at trial; instead, it was attached as an exhibit to the summary-judgment motion filed by PMA before trial. A copy of the deposition contained in the record indicates that Clemons testified that she suffered from depression because of "this whole ordeal" and explained in detail how her depression had affected her daily life. However, the record indicates that when she was asked in her deposition if she was seeking compensation based on depression in her workers' compensation action, Clemons responded in the negative.
The record reveals that counsel for Advantage objected at trial to questioning regarding Clemons's depression. During the direct examination of Clemons, the following exchange occurred:
 "[CLEMONS]: I am a lot worse today than back then, because I was slammed against the wall with depression. . . .
 "I cannot concentrate. I am fatigued. I could not sleep. I was put on Xanax, Ambien. I was already taking Zoloft.
 . . .
 ". . . But I have been depressed for a long period of time. No income, it's mental, it's physical. Lack of sleep; when you don't sleep, you can't function.
 "[COUNSEL FOR CLEMONS]: How does that depression manifest itself in your daily activities?
 "[COUNSEL FOR ADVANTAGE]: You Honor, I'm going to object to this line of questioning and testimony. There's been no allegation whatsoever in the summons or complaint or the amended complaints with regards to depression. We're hearing about it today.
 "[COUNSEL FOR CLEMONS]: Depression is a by-product of her physical injuries, and she's testified about it at deposition that was taken less than two years ago.
 "[THE TRIAL COURT]: Restate your question.
 "[COUNSEL FOR ADVANTAGE]: She specifically stated that she was not claiming depression in her lawsuit, on page 59, your Honor.
 "[THE TRIAL COURT]: Restate your question.
 "[COUNSEL FOR CLEMONS]: The question, Ms. Clemons, how has your depression manifested itself to the point that it has affected your daily activities?
 "[COUNSEL FOR ADVANTAGE]: Same objection.
 "[THE TRIAL COURT]: I sustain the objection.
 ". . . . *Page 119 
 "[COUNSEL FOR CLEMONS]: Do you believe that you should return to work back at Advantage if the position was offered to you like the one you had in September of 2003?
 "A: No, I would not be able to.
 "[COUNSEL FOR CLEMONS]: Why not?
 "A: Because I'm not physically or mentally able to do anything.
 "[COUNSEL FOR CLEMONS]: Why do you say that?
 "A: Because I'm just a totally crazy person. I mean —
 "[COUNSEL FOR ADVANTAGE]: Your Honor, might I ask the Court for a standing objection with regards to relevance —
 "[THE TRIAL COURT]: I can't hear you.
 "[COUNSEL FOR ADVANTAGE]: Might I request a standing objection with regard to relevance concerning any testimony with regards to depression or mental status, as it was not originally pled in the summons and complaint.
 "[THE TRIAL COURT]: No. I told you I will only consider relevant evidence.
 "[COUNSEL FOR ADVANTAGE]: Thank you. I will maintain my objection.
 "[THE TRIAL COURT]: All right. Let's go."
During the direct examination of Clemons's husband, William V. Clemons, the following occurred:
 "[COUNSEL FOR CLEMONS]: All right. And have you noticed in the last two or three years changes in her demeanor, her attitude, that you would associate with depression?
 "A: Yes, sir, I have. Sometimes when I'm laying over in Sheffield and I'll call home to see how everything's going, she just seems real down and —
 "[COUNSEL FOR ADVANTAGE]: You Honor, I'm going to renew my objection with regards to her mental state and depression.
 "[THE TRIAL COURT]: Hearsay. Sustain the objection."
In its May 24, 2006, judgment, the trial court found that Clemons continued to suffer from "both physical and psychological disabilities" and that, as a result, Clemons "would be unable to sustain gainful employment and is not capable of being retrained for gainful employment." In so finding, the trial court set forth, in detail, the testimony elicited at trial regarding Clemons's depression and indicated its reliance on that testimony in reaching its judgment. In its August 1, 2006, amended judgment, the trial court continued to rely on Clemons's claim of depression in finding that she had suffered a permanent and total disability.
In T.L.H. v. R.A.R., 977 So.2d 482 (Ala.Civ.App. 2007), T.L.H. engaged in an extra-marital relationship with R.A.R. that resulted in the birth of a child. On March 3, 2005, T.L.H. filed a complaint against R.A.R. seeking, among other things, compensatory damages for medical expenses related to her pregnancy and punitive damages. 977 So.2d at 491. R.A.R. subsequently filed a separate petition in the trial court on July 25, 2005, alleging that he was the child's biological father and seeking a determination of his custodial rights to the child. T.L.H. answered and counter-claimed, seeking, among other things, full custody of the child. In her response to R.A.R.'s July 25, 2005, petition, T.L.H. did not ask to be reimbursed for the medical expenses associated with her pregnancy or the birth of the child. Following an ore tenus hearing, the trial court entered a judgment in which it ordered, among other *Page 120 
things, R.A.R. to reimburse T.L.H. for medical expenses she had paid related to the birth of the child and to pay all outstanding medical expenses related to the birth of the child.977 So.2d at 490. T.L.H.'s March 3, 2005, action was still pending at that time.
T.L.H. appealed, arguing, among other things, that the trial court had erred by ordering R.A.R. to reimburse her for medical expenses related to the birth of the child when she did not seek such relief at trial but, instead, specifically requested that relief in a separate civil action. T.L.H. v.R.A.R., 977 So.2d at 490. The record on appeal indicated that T.L.H. had objected when counsel for R.A.R. first raised the issue of money owed as a result of the child's birth. T.L.H. alleged in her postjudgment motion that no evidence was presented at trial regarding the amount of money T.L.H. had paid for expenses related to her pregnancy and the birth of the child. Relying on Rule 15(b), this court reversed, holding that "the issue of payment of medical expenses associated with the child's birth was not tried by the express or implied consent of the parties." T.L.H. v. R.A.R., 977 So.2d at 491. In so holding, this court stated that the trial court had prejudiced T.L.H. when it "amended the pleadings to include a claim for previously incurred and outstanding medical expenses associated with the birth of the child when no evidence was presented at trial relating to those expenses."977 So.2d at 491.
In Kohler Co. v. Miller, 921 So.2d 436
(Ala.Civ.App. 2005), Miller filed a complaint seeking workers' compensation benefits for injuries to her hands, wrists, and arms caused by repetitive motions made during her employment with Kohler. At trial, Miller attempted to amend her complaint to claim for the first time that the effects of her hand, wrist, and arm injuries extended to her neck and shoulders.921 So.2d at 443. The trial court allowed evidence pertaining to Miller's neck and shoulder pain over the objection of Kohler. The trial court subsequently entered a judgment finding that Miller had suffered a 29% permanent partial disability.
On appeal, Kohler argued, among other things, that the "[trial] court erred by allowing [Miller] to present evidence indicating that she had pain extending to her neck and shoulders because, it [said], [Miller] did not timely assert those complaints."Kohler, 921 So.2d at 442. This court declined to reverse on that issue because in that case the trial court had expressly stated that it had not considered whether Miller's injuries to her hands, wrists, and arms caused pain to her neck and shoulders. Further, this court held that the admission of evidence regarding Miller's pain in her neck and shoulders was harmless error because the trial court had not relied on it when making its judgment.
As in T.L.H., the record reveals that Clemons's claim of depression was not tried by the express or implied consent of the parties. Advantage objected when counsel for Clemons first raised the issue of depression at trial. Pursuant to Rule 15(b), Ala. R. Civ. P., it is incumbent on the objecting party to show that the evidence would in some way prejudice the party. Advantage has demonstrated that it was prejudiced in that Clemons presented evidence of depression at trial over the objections of Advantage, the trial court sustained the objections, and the trial court then considered the evidence of depression in finding Clemons to be permanently and totally disabled. In light of the prejudice to Advantage, we cannot excuse the admission of the evidence of Clemons's depression as harmless error. Unlike the trial court in Kohler, the trial court in this *Page 121 
case, as indicated in its final judgment, considered Clemons's depression when finding Clemons to be permanently and totally disabled, although it had stated that it would "only consider relevant evidence." Accordingly, we conclude that Advantage was unduly prejudiced by the trial court's decision to amend the pleadings and to consider Clemons's claim of depression.
Given that the trial court's finding of permanent and total disability is based, in part, on its finding that Clemons is suffering from depression, we reverse the trial court's judgment finding Clemons to be permanently and totally disabled and remand the action for the trial court to make a disability determination without considering Clemons's claim of depression. Because we are reversing on this basis, we pretermit discussion of the remaining issues raised on appeal.
REVERSED AND REMANDED.
PITTMAN and THOMAS, JJ., concur.
BRYAN and MOORE, JJ., concur in the result, without writing.
[1] The record indicates that PMA insured Advantage at the time of Clemons's March 2002 injury and that Liberty became Advantage's workers' compensation insurance carrier in July 2004.
[2] We note that Advantage's appeal was held in abeyance pending the disposition of PMA's postjudgment motion. SeeHurley v. Hurley, 980 So.2d 985, 987 n. 1 (Ala.Civ.App. 2007) (holding that a wife's appeal was held in abeyance when the wife filed her notice of appeal before the husband timely filed his postjudgment motion); McConico v.Culliver, 955 So.2d 447 (Ala.Civ.App. 2006) (holding that an appeal filed before a timely post-judgment motion is filed is held in abeyance pending the disposition of the postjudgment motion); see also Rule 4(a)(5), Ala. R.App. P.