THOMPSON, Presiding Judge.
Jeff White appeals from a judgment finding that White’s former employer, HB & G Building Products, Inc. (“HB & G”), was no longer obligated to pay workers’ compensation benefits for a knee injury White had suffered while working for HB & G. The basis for the trial court’s judgment was its finding that, while working for a subsequent employer, White aggravated his knee injury rather than having a recurrence of that preexisting injury.
The record indicates the following. White was employed by HB & G as a work-release inmate. On January 22, 2007, he slipped and fell while at work, dislocating his right knee. HB & G authorized Dr. Tai Q. Chung to treat White’s knee and paid the attendant medical expenses. It also paid White workers’ compensation benefits.
Dr. Chung, who testified by deposition, said he first treated White’s right-knee injury on January 31, 2007, at which time he diagnosed White with patella dislocation. He noted that White had been able to push his patella back into place himself. An MRI was performed on White’s right knee on February 7, 2007. Dr. Chung said that the MRI indicated that White’s right kneecap had “come out or was half coming out” and that there was a probable tear in the soft tissue around the kneecap. Based upon the results of the MRI, Dr. Chung asked White to wear a brace to protect the kneecap and to do exercises to build up the muscles surrounding the kneecap.
*157 White continued to see Dr. Chung for treatment throughout the spring of 2007. At White’s April 9 visit, Dr. Chung determined that the right kneecap was no longer moving and that there was no knot on the medial side, or inside, of the knee. Dr. Chung said that White’s knee had healed to the point where White could return to regular duty at work, without restriction. White returned to regular duty for HB & G on April 10.
White next saw Dr. Chung on May 7, 2007. At that time, Dr. Chung said, White’s knee was no longer coming out of place, there was no laxity in the kneecap, and White had full range of motion in his right knee. However, White told Dr. Chung that his knee was still “swollen, aching, and popping.” Dr. Chung told White that the knee was healing and refused to operate on it. White was not satisfied with Dr. Chung’s treatment and requested a second opinion, which Dr. Chung said he encouraged. May 7, 2007, was the last time Dr. Chung saw White. In July 2007, White selected Dr. Dexter Walcott, pursuant to the procedure set forth in § 25-5-77(a), Ala. Code 1975, to replace Dr. Chung. White’s first appointment with Dr. Walcott was not until October 2, 2007.
In the midst of seeking a second opinion regarding the treatment of his knee injury, White asked Sgt. Ward, one of his correctional officers, if he could change jobs. He did not say what prompted his desire to change jobs. Regardless, White said that he left HB & G in May or June 2007 and began a new job at Cutt’s Restaurant (“Cutt’s”). White worked at Cutt’s part time from June 2007 until January 2008; he worked there full time from January 2008 to June 2008. His duties at Cutt’s included washing dishes, emptying the trash, cleaning the kitchen at the end of the day, mopping, and sweeping. Much of his job at Cutt’s required him to stand on a concrete floor. While working at Cutt’s, White said, his knee would swell and ache “every day,” and he developed leg cramps from standing. He also said that his knee hurt worse after standing for long periods.
When White first saw Dr. Walcott in October 2007, he complained that his right knee “felt loose” and that he felt something “slipping around inside his knee.” When providing his history to Dr. Walcott, White attributed his knee problems to the January 22, 2007, fall that occurred while he was working for HB & G, and he said that he had not had any other accidents since that fall. During Dr. Walcott’s initial examination of White, he discovered a knot in the medial part of White’s knee; however, Dr. Walcott said, he did not believe that the knee felt mobile. White was “apprehensive” when Dr. Walcott pushed his kneecap laterally, which, Dr. Walcott testified, is the way a kneecap will usually dislocate, and White’s kneecap tilted slightly to one side, which is typical for someone who has a kneecap problem, Dr. Walcott said, but he did not find that White had any laxity in the ligaments in the sides of his right knee. Dr. Walcott also noted that White had a small amount of swelling in his right knee.
As part of his initial examination, Dr. Walcott also reviewed the February 7, 2007, MRI and X-rays taken of White’s knee. He said White’s X-rays showed a tilting of the patella and an “irregular appearance on the medial, or inside, part of his patella, or kneecap, which sometimes can be where a piece of bone could be chipped off or ligament pulled off of your patella.” The MRI indicated that White had swelling in his soft tissue around the right knee. Dr. Walcott said that he also saw what he “thought might be a loose body, loose piece of cartilage or bone, floating around in [the] suprapatellar *158 pouch just above [White’s] kneecap.” Based upon his examination, and the fact that White’s problems had persisted since January 2007, Dr. Walcott suggested that White was a good candidate for surgery.
In his deposition, Dr. Walcott testified that, after his October 2, 2007, examination of White, White’s case manager at HB & G’s workers’ compensation carrier provided him with paperwork asking whether he had an opinion as to whether White had reinjured his right knee, had aggravated his right-knee injury, or had sustained a new injury since leaving his job at HB & G. Dr. Walcott said that, although he circled the word “aggravated” on the form, he did not think the question was well worded, so he included a paragraph in which he stated that it was possible that White had aggravated his knee injury but that it was also possible that White had reinjured his knee. He noted that, at the time he was asked to make that determination, he had seen White only once and he could not say whether White’s knee problem was a reinjury or an aggravation; Dr. Walcott said, “I think it could have been a continuation of his symptoms from his original injury.” During his deposition, Dr. Walcott also testified, however, that White’s knee problems could have been aggravated by the physical requirements of his job at Cutt’s. Dr. Walcott candidly testified that he “really [did not] know” whether White’s right-knee problem was an old injury, a new injury, an aggravation, or a recurrence.
After considering the evidence and the arguments of the parties, the trial court determined that the medial knot and patella apprehension in White’s right knee were new findings and that, according to Dr. Chung’s records on White, they had not been present when White left HB & G’s employment. Accordingly, citing the “last-injurious-exposure rule,” the trial court found that the activities in which White had engaged in the course of his employment with Cutt’s had aggravated a preexisting condition and that, therefore, HB & G was no longer responsible for White’s workers’ compensation benefits. White appeals.
White asserts that the material facts in this case were not in dispute; thus, he says, the trial court’s judgment is essentially a summary judgment entered in favor of HB & G. White urges this court to use the standard of review applicable to an appeal from a summary judgment rather than the standard used to review a judgment entered in a workers’ compensation action. However, the legislature has established the standard of review that this court is to apply in workers’ compensation actions, and this court will not deviate from that standard, which was stated in Jackson Landscaping, Inc. v. Hooks, 844 So.2d 1267, 1268 (Ala.Civ.App.2002), as follows:
“This case is governed by the 1992 Workers’ Compensation Act. This Act provides that an appellate court’s review of the standard of proof and its consideration of other legal issues shall be without a presumption of correctness. § 25-5 — 81(e)(1), Ala.Code 1975. It further provides that when an appellate court reviews a trial court’s findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2). Our supreme court ‘has defined the term “substantial evidence,” as it is used in § 12-21-12(d), to mean “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” ’ Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, *159 871 (Ala.1989). This court has also concluded: ‘The new Act did not alter the rule that this court does not weigh the evidence before the trial court.’ Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).”
White asserts that the “ ‘last injurious exposure’ rule has no place” in this ease. The basis for his argument seems to be that, in his opinion, the evidence does not support the trial court’s finding that White aggravated his preexisting knee condition. Instead, he says, the evidence indicates that, even though White was working at Cutt’s when Dr. Walcott treated his most recent knee condition, White was experiencing a recurrence of the knee problems that arose from the injury he sustained while working for HB & G, meaning the last-injurious-exposure rule was inapplicable in this case.[1]
“ ‘Under the last-injurious-exposure rule, the carrier [or employer] covering the risk at the time of the most recent compensable injury bearing a causal relation to the disability bears the responsibility to make the required workers’ compensation payments. “The characterization of the second injury as a new injury, an aggravation of a prior injury, or a recurrence of an old injury determines which insurer [or employer] is liable.” If the second injury is a “new injury” or an “aggravation of a prior injury,” then the carrier [or employer] at the time of the second injury is liable for the resulting medical bills and disability payments.’ ”
Hooker Constr., Inc. v. Walker, 825 So.2d 838, 845 (Ala.Civ.App.2001) (quoting Ex parte Pike County Comm’n, 740 So.2d 1080, 1083 (Ala.1999)); see also 2 Terry A. Moore, Alabama’s Workers’ Compensation § 31:35 at 873 (1998). This court recently discussed the application of the last-injurious-exposure rule.
“In Kohler Company v. Miller, [921 So.2d 436 (Ala.Civ.App.2005),] an employee sued Kohler Company, Inc., alleging that she was entitled to workers’ compensation benefits for injuries caused by repetitive motions she had been required to make during her employment with Kohler. Kohler answered and filed a third-party complaint against the employee’s subsequent employer, Cinram, Inc. The third-party complaint alleged that the employee had suffered an aggravation of a preexisting injury while working for Cinram; it also alleged that Cinram was liable to the employee for workers’ compensation benefits. Cinram moved for a summary judgment, arguing, among other things, that the employee had not suffered a new injury or an aggravation of a preexisting injury. Cinram argued that the employee had suffered a recurrence of a preexisting condition that had been caused by an on-the-job injury that had occurred when the employee was employed by Kohler. The trial court entered a summary judgment in favor of Cinram on the third-party complaint.
“On appeal, Kohler argued that the trial court had erred by entering a summary judgment in favor of Cinram on the third-party complaint because, it asserted, there was a disputed issue of material fact with regard to whether the last-injurious-exposure rule applied. This court discussed the last-injurious-exposure rule, quoting Patterson v. Liz Claiborne, Inc., 872 So.2d 181, 186 (Ala.Civ.App.2003):
*160 “ ‘ “ ‘Under the “last injurious exposure” rule, “liability falls upon the carrier covering [the] risk at the time of the most recent injury bearing a causal relation to the disability.” North River Insurance Co. v. Purser, 608 So.2d 1379, 1382 (Ala.Civ.App.1992). The trial court must determine whether the second injury is “a new injury, an aggravation of a prior injury, or a recurrence of an old injury; this determination resolves the issue of which insurer is liable.” Id.
“ ‘ “ ‘A court finds a recurrence when “the second [injury] does not contribute even slightly to the causation of the [disability].” 4 A. Larson, The Law of Workmen’s Compensation, § 95.23 at 17-142 (1989). “[T]his group also includes the kind of case in which a worker has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.” 4 A. Larson, § 95.23 at 17-152. A court finds an “aggravation of an injury” when the “second [injury] contributed independently to the final disability. ” 4 A. Larson, § 95.22 at 17-141. If the second injury is characterized as a recurrence of the first injury, then the first insurer is responsible for the medical bills; however, if the injury is considered an aggravation of the first injury, then it is considered a new injury and the employer at the time of the aggravating injury is liable for the medical bills and disability payments. North River, supra.’
“‘“United States Fid. & Guar. Co. v. Stepp, 642 So.2d 712, 715 (Ala.Civ.App.1994).”’
“Kohler Co. v. Miller, 921 So.2d at 445 (emphasis added). The last-injurious-exposure rule applies to employers as well as insurance carriers. Id.
“In Kohler Co. v. Miller, this court affirmed the summary judgment entered in favor of Cinram on the basis that Kohler had
“ ‘failed to present substantial evidence indicating that the worker’s employment with Cinram either caused a new injury or aggravated her old injury to the extent that it increased her disability. Kohler submitted no evidence indicating that the worker suffered a “new” injury or an “aggravation” of an old injury at Cin-ram; instead, the evidence was undisputed that the worker experienced a recurrence of the earlier symptoms of the injuries she had sustained while working at Kohler.’
“921 So.2d at 445.”
Equipment Sales Corp. v. Gwin, 4 So.3d 1125, 1126-27 (Ala.Civ.App.2008).
In this case, the evidence is undisputed that White’s complaints of knee pain, swelling, and aching never resolved before he was treated by Dr. Walcott. Indeed, White asked to see another physician because Dr. Chung’s treatment was not providing him with relief. There is no evidence indicating that White sustained a “second injury” to his right knee that contributed to his knee problems during the time he worked at Cutt’s. No single event occurred during White’s employment at Cutt’s that caused a new injury to his knee, and HB & G failed to present substantial evidence tending to indicate that White suffered a cumulative trauma that resulted in a second injury or an aggrava *161 tion to his right-knee injury giving rise to his current knee problems.
When White visited Dr. Walcott in October 2007, he was working at Cutt’s part time. After examining White, Dr. Walcott testified that the knee pain of which White was complaining in October 2007 was consistent with the pain White had experienced as a result of the January 22, 2007, injury. In October 2007, White still complained that his right knee was loose and that he felt something “slipping around inside” his knee. Dr. Walcott testified that, in his review of White’s February 2007 MRI and X-rays, he saw a “loose body” just above White’s right kneecap. Dr. Walcott also said that such a loose body could cause the tilting of White’s patella. Dr. Walcott could not say whether the activities White had undertaken at Cutt’s had aggravated White’s knee condition or whether White was experiencing a continuance of his earlier knee problems.
Based upon the record before us, we conclude that substantial evidence does not support the trial court’s finding either that a second injury to White’s right knee arose out of his employment with Cutt’s or that White aggravated his previous injury. On the other hand, evidence that the swelling, aching, and pain in White’s right knee never abated, even after Dr. Chung determined that he no longer needed to treat White, constitutes substantial evidence indicating that WTiite’s continuing knee problems are a recurrence of his January 22, 2007, injury. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for the trial court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN and THOMAS, JJ„ concur.
BRYAN, J., concurs in the result, without writing.
MOORE, J., dissents, with writing.

. Interestingly, in his brief to this court White does not bother to define what constitutes a "recurrence” of an injury, even though that is the crux of his argument and there are numerous cases defining the term in the context of the last-injurious-exposure rule.