PITTMAN, Judge.
This appeal involves consideration of continued responsibilities of property owners in a common-interest community following the voluntary termination of certain restrictive building and use covenants previously in force in the community.
In 2000, Billy E. Pipkin and Sandra T. Pipkin purchased from Tillman Builders, Inc., a parcel of property located in a unit of the Fairfield Place subdivision in Baldwin County; the parcel is identified in the deed of conveyance as “Lot 2, Fairfield Place Subdivision, Unit 1.” The Pipkins’ deed recites that the conveyance is “subject to the provisions hereinafter contained” in the deed and, after describing the property, states that the conveyance is
“SUBJECT TO, HOWEVER:
[[Image here]]
“Restrictive covenants as recorded in Miscellaneous Book 92, page 812, and Miscellaneous Book 93, page 365, and Miscellaneous Book 100, page 1974, Baldwin County, Alabama Probate Records.
“Terms, conditions, obligations and requirements set forth in the Articles of Incorporation of Fairfield Place Homeowner’s Association, Inc., recorded in Miscellaneous Book 93, page 1112, and rules and regulations which may be promulgated from time to time by said Association, Baldwin County, Alabama Probate Records.”
In late 2010 and early 2011, various instruments were recorded with the Baldwin Probate Court indicating that the Pip-kins, along with a sufficient majority of the owners of properties in Unit 1 of Fairfield Place, pursuant to paragraph 26 of the “Declaration of Restrictive Covenants” (“the declaration”) recorded at both Miscellaneous Book 93, page 365, and Miscellaneous Book 100, page 1974, which states that “these covenants may be terminated or changed in whole or in part” by a “vote of not less than sixty percent (60%) of the *1208 owners of the lots,” had elected to terminate the restrictive covenants. Thereafter, the Pipkins declined to pay assessments of the Fairfield Place Homeowners Association, Inc. (“the HOA”), taking the position that the termination of the effectiveness of the restrictive covenants as to Unit 1 of the subdivision abrogated any responsibility they might have to remit moneys to the HOA. The HOA then filed with the Baldwin Probate Court a verified statement indicating the existence of a lien against the Pipkins’ property in favor of the HOA.
In August 2011, the Pipkins initiated a civil action in the Baldwin Circuit Court (“the trial court”) seeking, among other things, a declaration that the HOA does not have the authority to impose dues or file liens as to the Pipkins and their property in the subdivision, as well as cancellation of the existing lien against the Pip-kins’ property. The HOA filed an answer and asserted a counterclaim in which the HOA sought a declaration that the Pipkins remained members of the HOA and responsible for assessments made by the HOA, as well as a money judgment in its favor with respect to unpaid assessments. The parties filed opposing summary-judgment motions, after which the trial court denied the motion filed by the HOA and granted the motion filed by the Pipkins without specifying the relief to which the Pipkins, as the plaintiffs, were entitled. The HOA appealed from that judgment; after the appeal had been transferred to this court pursuant to Ala.Code 1975, § 12-2-7(6), and the cause had been remanded to the trial court to specify the relief granted to the Pipkins, the trial court entered an amended judgment explicitly declaring that the HOA does not have the authority to impose dues or file liens as to the Pipkins and their property in the subdivision and canceling the existing lien against the Pipkins’ property.
“Appellate review of a summary judgment is de novo. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. A party moving for a summary judgment must make a prima facie showing ‘that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.’ If the movant meets this burden, ‘the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by “substantial evidence.” ’ ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ”
Kohler Co. v. Miller, 921 So.2d 436, 444 (Ala.Civ.App.2005) (citations omitted). Because “the pertinent facts giving rise to [the parties’] claims in this case are undisputed, we review the trial court’s application of law to those facts to determine whether the [Pipkins] were entitled to a judgment as a matter of law.” Smith v. Eufaula Planning Comm’n, 765 So.2d 670, 671 (Ala.Civ.App.2000).
The HOA contends that the efforts by the owners, including the Pipkins, to terminate the restrictive covenants applicable to Unit 1 of the subdivision did not abrogate their duties set forth in the declaration to pay the HOA for maintaining the common areas of the development. The language relied upon by the HOA in its argument appears in another portion of paragraph 26 of the declaration than that relied upon by the owners seeking to terminate the covenants:
“Notwithstanding anything to the contrary herein contained, it shall be the responsibility of the [HOA] to maintain and repair the Common Areas, and no *1209 amendment of this Declaration shall remove the responsibility of the [HOA] and/or Members thereof to maintain and repair the Common Areas (as herein defined) in accordance with the requirements of this Declaration and, also, the requirements of any government authority having jurisdiction over the Property. Any such attempted amendment shall be void and to no effect.”
Had the owners sought a mere amendment of the covenants, we might be inclined to agree with the HOA that the foregoing language would prevent the responsibility of members of the HOA from being abridged by contrary language. However, as the Pipkins correctly note in their brief, paragraph 26 conferred upon the owners, speaking through a sufficient majority thereof, not only the power to make changes to the recorded covenant documents — that is, the power of amendment — but also the power to terminate the covenants set forth in those documents, and the plain language of paragraph 26 indicates that we cannot properly impute an intent to the drafter of the covenant documents to equate the term “change” with the term “terminate.” See Federal Land Bank of New Orleans v. Terra Res., Inc., 373 So.2d 314, 320 (Ala.1979) (written instruments should be construed to give effect to all terms used therein). Thus, to the extent that the HOA seeks to rely upon the language subjecting the conveyance to the Pipkins to the terms of the recorded instruments setting forth restrictive covenants applicable to the subdivision, we agree with the Pipkins that that reliance is misplaced.
The firm ground upon which the Pipkins rest falls away, however, when attention turns to the second issue raised by the HOA: whether the Pipkins remain subject to the articles of incorporation and bylaws of the HOA by virtue of the language in their deed expressly making the conveyance “subject to” those instruments. Although there may be merit in the Pipkins’ argument that, as to any conflict between covenant documents and the articles of incorporation regarding membership, the provisions of the covenant documents will control, see Highland Oaks Estates Homeowners Ass’n v. Estapa, No. 2010 CA 0146 (La.Ct.App.2010) (not published in So.3d), we note that the Pipkins themselves have, via collective action with other similarly situated landowners, terminated the effect of the covenant documents. However, neither Highland Oaks nor any other caselaw of which we have been made aware speaks to the situation in which a landowner has taken title via a deed to his or her parcel “subject to” not only a set of covenant documents, but also the articles of incorporation and bylaws of an association such as the HOA in this case. Just as we gave effect to all terms of the covenant documents in deciding the HOA’s first issue, we must give effect to all terms of the Pipkins’ deed inasmuch as they are susceptible, under Alabama law, to being enforced.
With respect to that matter, the Pipkins cite Bon Aventure, L.L.C. v. Craig Dyas L.L.C., 3 So.3d 859 (Ala.2008), as authority for the proposition that a deed making a conveyance “subject to” another recorded document is ambiguous as a matter of law. In Bon Aventure, a landowner took title to its parcel in a particular unit of a subdivision via a deed stating that the conveyance of the parcel was “subject to” restrictive covenants contained in a recorded instrument; however, the instrument expressly stated that the covenants did not apply to “any portion” of the unit in which the parcel was located. 3 So.3d at 861. In reversing a judgment against the grantee, who had sought to avoid the effect of the covenant document, our supreme court noted the patent ambiguity of subjecting a parcel in a unit to restrictions contained in a document that excluded its applicability to that unit. 3 So.3d at 865. However, as *1210 the Pipkins argue, that court also appeared to assail the drafter’s use of the term “subject to” in the deed, positing that because the deed had stated “only that the act of conveying the property [was] ‘subject to’ the restrictive covenants,” the deed was “simply not clear with regard to whether the restrictive covenants, which by their terms [were] not applicable to the property conveyed to Bon Aventure, were to become a new encumbrance on the property by operation of the deed.” 3 So.3d at 864.
We question whether Bon Aventure truly requires a grantor of real property in a subdivision seeking to place conditions upon the grantee’s receipt of that property to expressly incorporate a document by reference, especially given that Bon Aventure did not overrule, or even criticize, Turner v. Clutts, 565 So.2d 92 (Ala.1990), in which our supreme court held that the recordation of a document so as to give constructive knowledge of a restriction limiting the use of certain identified subdivision lots “for single family dwellings” bound subsequent grantees’ use thereof, even when the deeds in a grantee’s chain of title did not “state[ ] that the lots were conveyed subject to the recorded restrictions.” 565 So.2d at 93 and n. 1. Although there might be room to debate the clarity and enforceability of a provision in a deed making a conveyance “subject to” a document that, by its terms, should not apply to the property conveyed, we cannot conclude that the Pipkins’ deed conveying their property is ambiguous in stating that it was “subject to” the articles of incorporation and bylaws of the HOA for the subdivision as a whole.[1]
The articles of incorporation of the HOA, the terms of which the Pipkins’ title is, by deed, “subject to,” pr'ovide that membership in the HOA “shall be established by the recordation in the Baldwin County, Alabama, Probate Court Records of a deed of conveyance transferring record title to a Lot within the Property,” such as the Pipkins’ parcel; moreover, the articles state that “Membership shall be appurtenant to and may not be separated from ownership of any Lot within the Property which is subject to these Articles of Incorporation” and that membership terminates only “when any Member shall cease to be the Owner of record of a Lot within the Property.” Further, the articles also provide that “each Member for each Lot owned within the Property shall pay a portion of the total amount necessary for” the purposes of the HOA and that that amount “shall be assessed by the [HOA] ... at the beginning of each annual assessment period as such period is determined by the Board of Directors” of the HOA; failure to make a required payment within 30 days will constitute a default and will make the assessment “a lien against each Lot within the Property owned by the defaulting member.” Finally, the articles expressly state that “the Articles, the purposes and powers of the Association and the authority to establish liens against the property herein described” will “constitute covenants intended to run with the title to the herein described Property and the same shall be binding upon the parties hereto and upon their respective heirs, grantees, successors and assigns holding title to any portion of the Property.”
*1211 We cannot conclude that the foregoing language is susceptible to any reading other than that the articles of incorporation of the HOA were intended to amount to a separate and distinct set of covenant provisions that were intended to bind Unit 1 landowners such as the Pipkins and that were intended to run with the land. The fact that the Pipkins might benefit to a lesser degree[2] than other subdivision landowners from membership in the HOA or from assessments payable to the HOA does not constitute a valid basis for concluding that the deed and covenant provisions we have considered should not apply to them. The trial court, therefore, erred in concluding that the Pipkins were entitled to a judgment as a matter of law solely because of the termination of recorded restrictive covenants otherwise specified in their deed.
Based upon the foregoing facts and authorities, we conclude that the summary judgment in favor of the Pipkins is due to be reversed. The cause is remanded for the trial court to enter a judgment in favor of the HOA.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and MOORE and DONALDSON, JJ„ concur.
THOMAS, J., concurs in the result, without writing.

. We are not long detained by the Pipkins’ contention that the articles of incorporation do not reflect their applicability to the Pip-kins' lot in Unit 1. The articles state that the purpose of the HOA is ”[t]o exercise its powers and functions on that certain real property ... particularly described as ... FAIRFIELD PLACE, UNIT II ... and such other property as may appropriately be placed under the jurisdiction of [the HOA]; such as but not limited to, Unit I." In other words, the articles specifically identify-Unit I as being within the scope of property upon which the HOA will operate.

. We note that the HOA’s president testified via affidavit that a lake just west of Unit 1 acts as "a retention pond for the subdivision and captures storm water runoff from and for the benefit of the subdivision, including lots from Unit 1”; that "[a] significant portion of the dues collected from ... members [of the HOA] are used to keep up and maintain the lake” for purposes such as fishing; that the HOA maintains two vacant lots in the subdivision for all subdivision residents as a park and playground; that the HOA maintains insurance coverage as to those two lots; and that the HOA maintains three "entrance statements” in the subdivision that purportedly benefit the value of all lots in the subdivision.